Claudia Center, SB #158255
ccenter@dredf.org
Sydney Pickern, SB #303908
spickern@dredf.org
Malhar Shah, SB #318588
mshah@dredf.org
Disability Rights Education and Defense Fund
3075 Adeline St. #210
Berkeley, CA 94703
Telephone: (510) 644-2555
Fax: (510) 841-8645

Jinny Kim, SB#208953
jkim@legalaidatwork.org
Rachael Langston, SB#257950
rlangston@legalaidatwork.org
Legal Aid at Work
180 Montgomery St., Suite 600
San Francisco, CA 94104
Telephone: (415) 864-8848
Fax: (415) 593-0096

*Attorneys for Plaintiffs*
*Kara Gordon, Isabel Callejo-Brighton*
*and John Doe*

# THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| KARA GORDON, ISABEL CALLEJO-BRIGHTON and JOHN DOE,<br><br>Plaintiffs,<br><br>v.<br><br>STATE BAR OF CALIFORNIA, DONNA HERSHKOWITZ in her official capacity as Interim Executive Director of the State Bar of California, and NATIONAL CONFERENCE OF BAR EXAMINERS,<br><br>Defendants. | Case No. : 3:20-cv-06442-LB<br><br>FIRST AMENDED COMPLAINT OF DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AND THE CALIFORNIA UNRUH ACT |

{00605886.DOC}    Case No.: 3:20-cv-06442-LB

FIRST AMENDED COMPLAINT

Plaintiffs ISABEL CALLEJO-BRIGHTON, KARA GORDON, and JOHN DOE bring these claims for relief against Defendants STATE BAR OF CALIFORNIA, DONNA HERSHKOWITZ, in her official capacity, and NATIONAL CONFERENCE OF BAR EXAMINERS, and allege:

## NATURE OF THIS ACTION

1.     Plaintiffs KARA GORDON, ISABEL CALLEJO-BRIGHTON, and JOHN DOE (together "Plaintiffs") bring this action against Defendants STATE BAR OF CALIFORNIA ("STATE BAR"), DONNA HERSHKOWITZ, in her official capacity, and NATIONAL CONFERENCE OF BAR EXAMINERS ("NCBE"). Plaintiffs allege violations of Titles II and III of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* and California's Unruh Act, Cal. Civ. Code § 51, *et seq*.

2.     To practice law in California, applicants including Plaintiffs must pass the California bar exam. Offered twice a year in July and February, the bar exam typically consists of two major components: a 200-item multiple-choice test called the Multistate Bar Examination ("MBE") administered on the first day of the exam, and a five-item essay test and one-item performance test disseminated by the STATE BAR on the second day.

3.     This year, because of the deadly COVID-19 pandemic, the California Supreme Court directed the STATE BAR and Defendant Hershkowitz to reschedule the July 2020 bar exam as a remote administration on October 5 and 6, 2020.

4.     In response to the directive of the California Supreme Court, the STATE BAR and Defendant Hershkowitz designed a remote administration of the bar exam for virtually all test-takers. Plaintiffs are informed and believe, and thereupon allege, that as many as 11,000 test takers will take the bar exam through the STATE BAR's remote administration.

5.     In planning and designing this remote administration, the STATE BAR and Defendant Hershkowitz disregarded the needs and rights of a small number of test takers with disabilities like Plaintiffs. Instead of implementing common sense solutions to allow these test takers to participate in the remote administration of the bar exam, the STATE BAR and Defendant Hershkowitz are requiring these disabled test takers to travel to and participate in an

in-person administration of the bar exam. The two-tiered system adopted by the STATE BAR and Defendant Hershkowitz is unfair and dangerous to the Plaintiffs and other disabled test takers who are being forced to test in person and endure risks to their health and test performance that are not being imposed on their nondisabled peers.

6.    Plaintiffs are law school graduates with disabilities who require and who have been approved by the STATE BAR and Defendant Hershkowitz for certain testing accommodations to demonstrate their knowledge and skills during the administration of the bar exam. Plaintiffs are also individuals who, because of their underlying medical conditions, and/or those of members of their households, are at higher risk of severe complications should they or their household member contract COVID-19. Thus, to maintain their health and safety during the pandemic, Plaintiffs must stay within their homes as much as possible, and must avoid being in close proximity with other individuals who may be positive for COVID-19 or surfaces contaminated with the virus. Related, should Plaintiffs be required to take the bar exam through an in-person administration, they would be faced with the risk of disruptive fear and anxiety associated with the risk of COVID-19 exposure during the exam, interfering with their ability to perform at their true ability. These risks are imposed on the basis of Plaintiffs' disabilities, and are not imposed on Plaintiffs' nondisabled peers.

7.    As the STATE BAR and Defendant Hershkowitz have detailed in a series of changing FAQs,[1] the following disabled test takers are excluded from the remote administration of the bar exam:

- test takers with disabilities who cannot stay in front of the web camera for the entirety of each test section, such as Plaintiff Isabel Callejo-Brighton who needs unscheduled bathroom breaks during test sections due to her irritable bowel syndrome;

- test takers with disabilities who need a paper iteration of the exam, such as Plaintiff Kara Gordon who cannot use a computer screen for long periods due to her CSF leak

---

[1] OCTOBER 2020 BAR EXAM FAQs (Sept. 10, 2020), https://www.calbar.ca.gov/Portals/0/documents/admissions/Examinations/October-2020-Bar-Exam-FAQs.pdf.

and Plaintiff John Doe who requires a paper copy due to his ADHD and other
disabilities;

- test takers with disabilities who need paper scratch paper throughout the exam, such
  as Plaintiff Kara Gordon who cannot use the digital scratch paper due to her CSF
  leak;

- test takers with disabilities who need different amounts of extra time per test section;
  and

- test takers with disabilities who use Dragon Speech Recognition or screen reading
  software such as JAWS.

8.      Plaintiffs have requested that the STATE BAR and Defendant Hershkowitz
permit them to participate in the remote administration of the bar exam with their necessary
testing accommodations. However, according to the STATE BAR and Defendant Hershkowitz,
unless Plaintiffs waive their rights to their necessary and approved testing accommodations, they
will be required to sit for the bar exam in person. They will not be permitted to take the bar exam
in the safety of their homes, an option available to all test takers without disabilities.

9.      Plaintiffs seek all appropriate relief to compel Defendants to permit them to take
the bar exam remotely with the reasonable accommodations to which they are entitled in place,
and to provide additional remedies.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over the subject matter and the parties pursuant to 28
U.S.C. §§ 1331, 2201, and 2202. Plaintiffs bring this suit under Titles II and III of the Americans
with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq*.

11.      This Court has supplemental jurisdiction over the related state law claims
pursuant to 28 U.S.C. § 1367(a). Plaintiffs' claims pursuant to California's Unruh Civil Rights
Act, Cal. Civil Code § 51, *et seq.* are related, as all of Plaintiffs' claims share common operative
facts. Resolving all state and federal claims in a single action serves the interests of judicial
economy, convenience and fairness to the parties.

12.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(c).
Defendants conducts discriminatory professional licensing activities within the Northern District
of California, and the events giving rise to Plaintiffs' claims have occurred and are occurring in
the Northern District of California.

## PARTIES

13.     Plaintiff KARA GORDON is a 2020 graduate of the University of California,
Berkeley School of Law, and a resident of Berkeley, California. Plaintiff GORDON is diagnosed
with a dural tear leading to a cerebral spinal fluid leak and cranial hypotension. Because of their
condition, Plaintiff GORDON experiences migraines, eye pain, blurred and double vision,
nausea, photophobia, and periodic cognition issues while sitting upright. GORDON is
substantially limited in several major life activities and major bodily functions, as described, and
is a person with a disability as defined by the Americans with Disabilities Act and corresponding
California antidiscrimination laws. GORDON is qualified to take the California bar exam.

14.     Plaintiff ISABEL CALLEJO-BRIGHTON is a 2020 graduate of the University of
San Francisco School of Law and a resident of Berkeley, California. Ms. CALLEJO-
BRIGHTON is diagnosed with Stage 4 endometriosis, irritable bowel syndrome, small intestinal
bacterial overgrowth, a neurodevelopment disorder, and an anxiety disorder related to her
medical conditions. As a result of her disabilities, Ms. CALLEJO-BRIGHTON has constant
abdominal and pelvic pain and, due to treatment complications, compromised bladder and bowel
function. She experiences bowel urgency, irregularity, pain, and urgency to use the restroom.
She also has asthma. She is substantially limited in several major life activities and major bodily
functions, including respiratory, digestive, genitourinary, bowel, and bladder, *see* 28 C.F.R. §
35.108(c)(1)(ii), and is a person with disabilities as defined by the Americans with Disabilities
Act and corresponding California antidiscrimination laws. She is qualified to take the California
bar exam.

15.     Plaintiff JOHN DOE is a 2020 graduate of an ABA-accredited law school, and a
resident of Los Angeles, California. Plaintiff DOE is diagnosed with ADHD, generalized anxiety
disorder, trichotillomania, and dysthymic disorder (persistent depressive disorder). He is

substantially limited in several major life activities and major bodily functions, including concentrating and brain function and is a person with a disability as defined by the Americans with Disabilities Act and corresponding California antidiscrimination laws. He is qualified to take the California bar exam.

16.     Defendant STATE BAR OF CALIFORNIA is a "public entity" for purposes of Title II of the ADA, 42 U.S.C. § 12131(1). Defendant STATE BAR establishes eligibility criteria for becoming licensed to practice law in California. One requirement for licensing is passage of the California State Bar Exam, which the STATE BAR develops, administers, and scores each year. The STATE BAR also evaluates requests for reasonable accommodations by test takers with disabilities and decides whether to grant or deny those requests. The STATE BAR conducts business throughout the state of California, and one of its two primary offices is located in San Francisco.

17.     Defendant DONNA HERSHKOWITZ is the Interim Executive Director of the State Bar of California.  Defendant Hershkowitz, in her official capacity, is legally responsible for ensuring compliance with federal law by the STATE BAR.

18.     Defendant NATIONAL CONFERENCE OF BAR EXAMINERS (NCBE) is a corporation headquartered in Madison, Wisconsin, which develops and controls various tests relating to the licensing of law school graduates seeking admission to the bar. The NCBE disseminates the Multistate Bar Examination (MBE) to jurisdictions like California that use the examinations as a component of their bar examinations, and it determines and controls the formats in which the MBE is offered and administered. Defendant NCBE is a "public accommodation" for purposes of Title III of the ADA, 42 U.S.C. § 12181(7).

## FACTS COMMON TO ALL CAUSES OF ACTION

19.     The novel coronavirus nCOV-2019 ("COVID-19") is a highly contagious respiratory illness. The first confirmed case of COVID-19 in the United States was reported on January 21, 2020[2], and only five days later, the first two cases were confirmed in California.[3]

---

[2] *Timeline of WHO's response to COVID-19* ("*WHO Timeline*"), WORLD HEALTH ORGANIZATION (June 29, 2020), https://www.who.int/news-room/detail/29-06-2020-covidtimeline (last visited Sept. 14, 2020).

The World Health organization declared COVID-19 a pandemic on March 11, 2020.[4] On March 4, 2020, Governor Gavin Newsom declared a state of emergency in California because of the COVID-19 pandemic, and on March 19, 2020, the governor issued an executive order[5], requiring "all individuals living in the state of California to stay home or at their place of residence" in order to "protect public health."[6] As recently as August 28, 2020, the California Department of Public Health has stated that "[c]ommunity spread of infection remains a significant concern across the state."[7] To date, over 750,000 Californians have been infected with COVID-19, and at least 14,000 have died because of the virus.[8] Individuals with underlying medical conditions are at a particular high risk of developing severe, and often life-threatening, complications from contracting COVID-19. As the Department of Public Health explained, "Higher levels of community spread … increase the likelihood of infection among individuals at higher risk of serious outcomes from COVID-19, including … those with underlying health conditions who might live or otherwise interact with an infected individual." The Center for Disease Control has confirmed that people with underlying health conditions are six times more likely to be hospitalized, and twelve times more likely to die, from contracting COVID-19.[9]

---

[3] "Two Confirmed Cases of Novel Coronavirus in California," CALIFORNIA DEPARTMENT OF PUBLIC HEALTH, OFFICE OF PUBLIC AFFAIRS (Jan. 26, 2020), https://www.cdph.ca.gov/Programs/OPA/Pages/NR20-001.aspx (last visited Sept. 14, 2020).

[4] *WHO Timeline*, *supra* note 2.

[5] Cal. Executive Order N-33-20 (Mar. 19, 2020), https://covid19.ca.gov/img/Executive-Order-N-33-20.pdf.

[6] *Id.*

[7] *Statewide Public Health Officer Order*, CALIFORNIA DEPARTMENT OF PUBLIC HEALTH (Aug. 28, 2020), https://www.rivcoph.org/Portals/0/Documents/CoronaVirus/August/GovernorOrders/8-28-20_Order-Plan-Reducing-COVID19-Adjusting-Permitted-Sectors-Signed.pdf?ver=2020-08-31-102913-927&timestamp=1598894957501 (last visited Sept. 14, 2020).

[8] *California COVID-19 By the Numbers: Numbers as of September 12, 2020*, CALIFORNIA DEPARTMENT OF PUBLIC HEALTH, Sept. 13, 2020, https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/ncov2019.aspx (last visited Sept. 14, 2020).

20.     On April 27, 2020, in response to the pandemic, the California Supreme Court postponed the July bar exam to September 2020, and directed the California State Bar to "make every effort possible to administer that examination online with remote and/or electronic proctoring."[10]

21.     On July 16, 2020, the California Supreme Court rescheduled the Bar Exam for October 5-6, 2020, and reiterated its direction that the California State Bar implement a remote administration of the bar exam.[11]

22.     On August 3-4, 2020, the American Bar Association approved a resolution urging "the highest court or bar admission authority of each jurisdiction to cancel and to not administer any in-person bar examination during the COVID-19 pandemic until and unless public health authorities determine that the examination can be administered in a manner that ensures the health and safety of bar applicants, proctors, other staff, and local communities."[12] The report supporting the resolution reasoned as follows:

> No one should have to choose between their long-term health—or life—and a licensing examination. However, bar applicants in jurisdictions scheduled to administer an in-person bar examination are being required to do so. And given the state of the legal employment market combined with the need to repay student loans and otherwise earn a living, many bar applicants feel they truly have no choice at all. [13]

---

[9] "Coronavirus Disease 2019 Case Surveillance – United States, January 22 – May 30, 2020," *Morbidity and Mortality Weekly Report (MMWR)*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/mmwr/volumes/69/wr/mm6924e2.htm?s_cid=mm6924e2_w (last visited Sept. 14, 2020).

[10] Letter from California Supreme Court to California State Bar (Apr. 27, 2020), https://newsroom.courts.ca.gov/internal_redirect/cms.ipressroom.com.s3.amazonaws.com/262/files/20203/Supreme%20Court%20Bar%20Exam.pdf.

[11] Letter from California Supreme Court to California State Bar (July 16, 2020), https://newsroom.courts.ca.gov/internal_redirect/cms.ipressroom.com.s3.amazonaws.com/262/files/20206/SB_BOT_7162020_FINAL.pdf.

[12] American Bar Association, Resolution 10G (adopted by The House of Delegates, Aug. 3-4, 2020), https://www.americanbar.org/content/dam/aba/directories/policy/annual-2020/10g-annual-2020.pdf.

[13] *Id.* at 4.

23.     In response to the directive of the California Supreme Court, the STATE BAR designed a remote administration of the bar exam for virtually all test-takers. Plaintiffs are informed and believe, and thereupon allege, that as many as 11,000 test takers will take the bar exam through the STATE BAR's remote administration.

24.     In planning and designing this remote administration, the STATE BAR disregarded the needs and rights of a small number of test takers with disabilities like Plaintiffs. Unlike all nondisabled test takers, the STATE BAR is requiring these disabled test takers to travel to and participate in an in-person administration of the bar exam during which they will be subject to additional risks of COVID-19 and the related fear and anxiety of this experience. The two-tiered system adopted by the STATE BAR is unfair and dangerous to the Plaintiffs and other disabled test takers who are being forced to test in person and endure risks to their health and test performance that are not being imposed on their nondisabled peers.

25.     The STATE BAR has posted on its website a Frequently Asked Questions document, "2020 Bar Exam FAQs" ("FAQs"), with information regarding how the remote exam will be administered, a document which has been updated at least seven times.[14] The FAQs set out policies that require disabled test takers with certain testing accommodations to take the test in person. Relevant to the Plaintiffs here:

a.     "Other than scheduled breaks, you are not permitted to leave the view of the web camera, unless you finish the session early and proceed to upload your answers."[15] The FAQs explain that "[f]or an applicant who has been granted double testing time on any portion of the exam, that means staying in view of the web camera for up to three hours, or until the applicant submits their answer file."[16] A person who cannot stay in front of the web camera for the entirety of each test section – including a test taker like Plaintiff CALLEJO-BRIGHTON who needs disability-related breaks during test sections to use the bathroom – is required to test in person.

---

[14] *See* n.1, supra.

[15] FAQs at 4.

[16] FAQs at 16.

b.    "In order to be provided with paper exam materials, you must test in-person at a test center assigned by the State Bar."[17] This means that Plaintiff GORDON who cannot test on their computer due to their CSF leak, and Plaintiff DOE who needs a paper exam due to his ADHD, are required to test in person to access those testing accommodations.

c.    "You are prohibited from bringing in and using physical scratch paper during the exam for the essay questions on day one and the multiple-choice questions on day two."[18] As a result, test takers with disabilities who need physical scratch paper throughout the exam are required to test in person. This includes Plaintiff GORDON who cannot use digital scratch paper on their computer screen due to their CSF leak.

26.    The FAQs acknowledge that the only way that a disabled test taker who needs these testing accommodations (unscheduled breaks, a paper exam, and paper scratch paper) can test remotely is to *waive* the necessary testing accommodations:

> If I have been granted a testing accommodation which would require that I take the exam in person, but would rather waive that accommodation to test remotely, is that allowed?

> Applicants can choose to waive their accommodations and take the online remote exam without the accommodations.[19]

27.    The NCBE's Memorandum of Understanding ("MOU") for the Use of Abbreviated NCBE Test Materials for October 5–6, 2020, Remote Administration, similarly states that test takers who require nonstandard test materials, including paper iterations of the MBE, cannot test remotely and must test at an in-person administration. On information and belief, the NCBE is waiving this requirement when requested by state bars.

28.    Common sense solutions exist to allow test takers with disabilities to participate

---

[17] FAQs at 18.

[18] FAQs at 7.

[19] FAQs at 14; *see also id.* at 16 ("If you have been granted extra testing time and you have a different amount of extra testing time for different sessions of the exam and/or you feel you will NOT be able to stay in view of the web camera for the duration of each question session, you may elect to waive or reduce your extra testing time or test in-person with your accommodations as granted."). The FAQs also include the following statement: "If the State Bar at any time determines in its sole discretion that any of your granted testing accommodation(s) cannot be administered remotely, the State Bar may require that you test in-person in order to utilize any such accommodations." *Id.* at 18.

in the remote administration of the bar exam:

     a.    Test takers with disabilities who need an alternative format of the exam such as a paper exam can be provided files through a secure file transfer for printing, or can be mailed or couriered a sealed exam to be open before the web camera. Remote proctoring can be done using Zoom or a proctoring vendor. Such solutions have been implemented by the DC Bar and the Law School Admissions Council through its LSAT-Flex program.[20]

     b.    Test takers with disabilities who need an unscheduled break to use the restroom can state their reason for the unscheduled break into the video before leaving. This solution has been implemented by the DC bar for all test takers.[21] Test takers who believe they need to have

---

[20] Law School Admissions Council, The LSAT, Introduction LSAT-Flex ("In light of the COVID-19 public health emergency, we are offering an online, remotely proctored version of the LSAT — called the LSAT-Flex. … In May, June, and July, we delivered the first LSAT-Flex administrations. Nearly 33,000 candidates successfully completed the LSAT-Flex to continue their law school journeys. … What if I was approved for testing accommodations for the in-person LSAT? Will I still have my accommodations with LSAT-Flex? Yes. LSAC is committed to working with LSAT-Flex test takers with disabilities to see that their accommodation needs are met under the circumstances. All test takers who were approved to receive accommodations for an in-person LSAT test date will receive the same or equivalent accommodations for the test's associated LSAT-Flex test. LSAC will communicate directly with each registrant with approved accommodations who is scheduled to take an LSAT-Flex exam, regarding their approved accommodations in the context of LSAT-Flex."), https://www.lsac.org/update-coronavirus-and-lsat/lsat-flex; Law School Admissions Council, Law School Admission in the Time of COVID-19: Top 10 Questions About the LSAT-Flex (Apr. 15, 2020) ("10. I have an LSAC-approved vision accommodation to use alternative materials, such as a braille test or a large-print paper test; can I still receive this accommodation when the LSAT-Flex test is given in May? Yes. For test takers who have been approved for a braille test or a large-print paper test, LSAC will work directly with them on a case-by-case basis to see that they receive their approved accommodation and appropriate remote proctoring in these circumstances. LSAC will communicate directly with candidates who require braille or large-print paper test materials to coordinate how they will receive their test materials and remote proctoring."), https://www.lsac.org/blog/law-school-admission-time-covid-19-top-10-questions-about-lsat-flex.

[21] Memorandum to Applicants to the October 2020 Remote Exam for Bar Admission from District of Columbia Committee on Admissions (COA) (Aug. 14, 2020) 3 ("Applicants are to remain in the frame of the camera for the duration of the exam. If an applicant must take a restroom break, or move out of the frame of the camera for any purpose, the applicant is to briefly state the reason on the video."); Letter from District of Columbia Court of Appeals Committee on Admissions to Tara Roslin (Sept. 1, 2020) ("Applicants granted off the clock breaks are required to take those breaks in view of the camera for remote proctoring purposes. If an applicant must take a restroom break, or leave for a break in connection with an accommodation, the applicant should state in the video the reason for leaving the view of the camera.") (emphasis in original), https://www.dccourts.gov/sites/default/files/divisionspdfs/committee%20on%20admissions%20pdf/Exam_informational_email_8-14-2020-Memo_1.pdf.

an unscheduled bathroom break may scan the bathroom with their web camera before the test administration.

    c.    Test takers with disabilities who need paper scratch paper throughout the exam can scan the front and back of their scratch paper, as is being done by all test takers for the performance test.[22]

    29.    Plaintiffs GORDON, CALLEJO-BRIGHTON, and DOE are individuals with disabilities who require testing accommodation for the bar exam that trigger the Defendants' requirement that they take the exam in person. As well, Plaintiffs' disabilities and/or those of their household members place them and their loved ones at high risk for serious, possibly life-threatening complications should they contract the COVID-19 virus. The risks of contracting COVID-19 during an in-person administration of the bar exam is not being imposed on Plaintiffs' nondisabled peers.

    30.    Plaintiffs are experiencing fear and anxiety about testing in person and potentially contracting COVID-19 during the proposed two-day in-person administration of the exam. They are further experiencing fear and anxiety that they will not be able to perform to their ability during the bar exam – either because they are testing in-person while experiencing fear and anxiety related to contracting COVID, or because they are testing remotely by waiving necessary testing accommodations. These risks and harms are not imposed on Plaintiffs' nondisabled peers.

### *Kara Gordon*

    31.    Plaintiff KARA GORDON is a 2020 graduate of the University of California, Berkeley School of Law. Plaintiff GORDON has a cerebrospinal fluid (CSF) leak, a disability caused by a tear in their dura mater, the outermost layer of connective tissue that surrounds the brain and spinal cord. When Plaintiff GORDON is upright for too long, CSF leaks through this dural tear, causing the fluid volume and pressure within their skull to drop, a condition known as intracranial hypotension. This causes Plaintiff GORDON to experience, among other things,

---

[22] FAQs at 7 ("You will be allowed to have eight pages of physical scratch paper (both sides must be blank) for the Performance Test on the afternoon of day two of the exam. You will be required to hold up to the camera the front and back of each piece of scratch paper you are using for the PT session.").

chronic migraines, light sensitivity, vision changes and eye pain, difficulty with memory and recall and decreased cognition.

32.     Being upright or looking at a computer for more than two hours exacerbates Plaintiff GORDON's dural tear and can trigger a migraine. When this happens, Plaintiff GORDON needs time to manage their symptoms by lying flat for at least half an hour, eating, drinking and closing their eyes and not looking at a computer screen.

33.     Plaintiff GORDON has secured an Associate Attorney position with an Oakland law firm, and needs to become a member of the California State Bar. GORDON is registered to sit for the October 2020 BAR EXAM and has been granted testing accommodations from Defendant, a paper iteration of the exam and paper scratch paper, formats which do not trigger Plaintiff GORDON's migraines, eye pain, and related vision and nausea problems.

34.     Because of Plaintiff GORDON's CSF leak, Plaintiff GORDON is at increased risk of developing serious and life-threatening complications should they contract the COVID-19 virus. But Defendant STATE BAR has informed GORDON that, in order to access their necessary testing accommodations, GORDON will be required to take the bar exam in person.

35.     Plaintiff GORDON is experiencing intense anxiety about taking the exam in person and putting their health at serious risk. Plaintiff GORDON further fears that they will not perform to their abilities during the test due to anxiety of contracting COVID-19 and becoming seriously ill. Such anxiety may also trigger a migraine during the test.

36.     Due to their disability, Plaintiff GORDON is at increased risk of serious illness from a COVID-19 infection. Moreover, the week following the bar exam, Plaintiff GORDON is scheduled for surgery related to the painful effects of their disability. In order to undergo the surgery, Plaintiff GORDON must take a COVID-19 test and limit their exposure to other people. If they take the bar exam in person, the status of their surgery may be in jeopardy. Only few doctors in the U.S. specialize in Plaintiff GORDON's disability, and if the surgery is postponed Plaintiff GORDON does not know when it can be rescheduled.

37.     Plaintiff GORDON faces irreparable harm because of Defendants' ongoing failure to offer the bar exam in a manner that is accessible to Plaintiff GORDON's disabilities,

1    and that provides an equal opportunity relative to their nondisabled peers.

2        *Isabel Callejo-Brighton*

3        38.    Plaintiff ISABEL CALLEJO-BRIGHTON is a 2020 graduate of the University of

4    San Francisco School of Law. She has secured a two-year fellowship with the Animal Legal

5    Defense Fund, which begins in November 2020. Her taking the bar exam in October 2020 is a

6    condition of her fellowship.

7        39.    CALLEJO-BRIGHTON is diagnosed with Stage 4 endometriosis, irritable bowel

8    syndrome, small intestinal bacterial overgrowth, a neurodevelopment disorder, and an anxiety

9    disorder related to her medical conditions. As a result of her disabilities, CALLEJO-BRIGHTON

10   has constant abdominal and pelvic pain and, due to treatment complications, compromised

11   bladder and bowel function. She experiences bowel urgency, irregularity, pain, and urgency to

12   use the restroom. She cannot sit for extended periods of time without using the restroom.

13   CALLEJO-BRIGHTON requires and has been granted unscheduled restroom breaks for her law

14   school exams and for the bar exam. Plaintiff CALLEJO-BRIGHTON cannot remain in front of

15   her webcam for the entirety of each testing period due to her need for consistent bathroom

16   access. Plaintiff CALLEJO-BRIGHTON also has asthma.

17       40.    These medical conditions also place Ms. CALLEJO-BRIGHTON at increased

18   risk of developing serious complications should she be hospitalized with COVID-19 virus.

19   During the pandemic, she has not left the house; her husband does the household shopping, and

20   she utilizes online conferencing for her medical appointments.

21       41.    Ms. CALLEJO-BRIGHTON has registered to take the October 2020 bar exam

22   and has been granted bathroom breaks (and related extra time) as a testing accommodation from

23   Defendant STATE BAR. But Defendant STATE BAR has informed Ms. CALLEJO-

24   BRIGHTON that, that in order to access her necessary accommodations, she will be required to

25   take the bar exam in person. Via an August 11, 2020 email, the STATE BAR Office of

26   Admissions informed Plaintiff CALLEJO-BRIGHTON, "Due to the accommodations that

27   you've been granted and/or the logistics of administering this examination, you are required to

28   take this examination in person at a Testing Accommodation Center." The email further

1  explained that because "test center locations have not been finalized, confirmation regarding

2  your testing center cannot be provided at this time."

3       42.     Plaintiff CALLEJO-BRIGHTON fears contracting COVID-19 during an in

4  person administration of the bar exam. She further fears that the stress she will experience while

5  taking the test in person and potentially contracting COVID-19 will cause her to perform poorly.

6  These risks to health and performance are not imposed on nondisabled test takers.

7       43.     Ms. CALLEJO-BRIGHTON faces irreparable harm because of Defendants'

8  ongoing failure to offer the bar exam in a manner that is accessible to her disabilities, and that

9  provides an equal opportunity relative to her nondisabled peers.

10      *John Doe*

11      44.     Plaintiff DOE is a 2020 graduate of an ABA-accredited law school. Plaintiff DOE

12  has ADHD, generalized anxiety disorder, trichotillomania, and dysthymic disorder (persistent

13  depressive disorder). Plaintiff DOE's trichotillomania prevents him from following COVID

14  safety protocols, putting him at increased risk of transmission; he rarely leaves the house.

15  Plaintiff DOE lives with his wife, who is pregnant with twins and is diagnosed with severe

16  asthma. These conditions place her at increased risk of developing serious complications should

17  she contract the COVID-19 virus.

18      45.     Plaintiff DOE is registered to sit for the October 2020 bar exam, and has been

19  granted necessary testing accommodations for his disabilities including a paper iteration of the

20  exam. But Defendant STATE BAR has informed DOE that, that in order to access his necessary

21  accommodations, he will be required to take the bar exam in person, causing him intense fear

22  and anxiety about the prospect of testing in person and putting both his and his wife's health at

23  serious risk.

24      46.     Due to his anxiety disorder, Plaintiff DOE has fear of contagion. He is concerned

25  that the stress he will experience of contracting COVID-19 if forced to take the Bar Exam in

26  person will cause him to perform poorly. This concern proved true when Plaintiff DOE took the

27  MPRE in-person in August 2020 and experienced significant panic and distractibility.

28      47.     Plaintiff DOE feels forced to forego his testing accommodation of a paper exam

because he cannot face the risks of testing in person. At the same time, he needs the paper exam and will not be able to test to his ability without it. Plaintiff DOE faces irreparable harm because of Defendants' ongoing failure to offer the bar exam in a manner that is accessible to his disabilities, and that provides an equal opportunity relative to his nondisabled peers.

## FIRST CLAIM FOR RELIEF
### Violation of Title II of the Americans with Disabilities Act of 1990
### 42 U.S.C. § 12131, *et seq.*
### against Defendant State Bar of California and Defendant Donna Hershkowitz in her official capacity

48.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

49.    Plaintiffs are qualified individuals with disabilities within the meeting of 42 U.S.C. §§ 12102(2) and 12132.

50.    As a public entity, Defendant STATE BAR is governed by Title II of the Americans with Disabilities Act (ADA) which provides that individuals with disabilities may not be "excluded from participation in or be denied the benefits of the services, programs or activities of a public entity," nor may they be "subjected to discrimination by any such entity." 42 U.S.C. § 12132.

51.    Defendant Hershkowitz, in her official capacity, is legally responsible for ensuring compliance with federal law by the STATE BAR.

52.    A public entity must also provide necessary reasonable modifications, 28 C.F.R. § 35.130(b)(7), and appropriate auxiliary aids and services, 28 C.F.R. § 35.160(b). "A public entity may not administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability" and "shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered." 28 C.F.R. § 35.130(b)(6), (b)(8).

53.    The obligation to ensure disability nondiscrimination includes an obligation to

ensure equal safety. *California School for the Blind v. Honig*, 736 F.2d 538, 545-46 (9th Cir. 1984), *vacated on other grounds*, 471 U.S. 148 (1985); *Putnam v. Oakland Unified Sch. Dist.*, No. C-93-3772 CW, 1995 U.S. Dist. LEXIS 22122, at **31-32 (N.D. Cal. June 9, 1995).

54.    Plaintiffs are qualified individuals who are entitled to participate in a fair, full and equal basis in the remote administration of the bar exam, with their necessary testing modifications.

55.    Allowing Plaintiffs to test remotely with their testing modifications would not impose a fundamental alteration, but would even the playing field and allow Plaintiffs' aptitudes and cognitive abilities to be fairly and accurately measured in an equally safe environment to their nondisabled peers.

56.    In violation of Plaintiffs' right to be free from disability-based discrimination, Defendants have denied Plaintiffs the opportunity to take the bar exam on an equal basis with nondisabled test takers.

57.    Under Defendants' unlawful two-tiered system, Plaintiffs are required to take the bar exam in person to access the testing accommodations that all parties acknowledge they need, thereby risking their health and subjecting themselves to anxiety related to COVID-19, while their non-disabled peers are safely testing from home. Plaintiffs may test remotely only if they agree to forgo their necessary testing accommodations. Either outcome is untenable.

58.    As a proximate result of the unlawful acts described herein, Plaintiffs have suffered and continue to suffer injury.

59.    Defendants' unlawful actions were and are intentional, willful, malicious and/or done with reckless disregard to Plaintiffs' right to be free from discrimination based on their disabilities.

60.    Plaintiffs are entitled to injunctive and declaratory relief, including emergency relief, and attorneys' fees and costs. Plaintiffs need and are entitled to extraordinary relief in order to take the October 2020 California State Bar Examination remotely with their testing accommodations.

**SECOND CLAIM FOR RELIEF**
**Violation of Title III of the Americans with Disabilities Act of 1990**
**42 U.S.C. § 12181, *et seq.***
**against Defendant NCBE**

61.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

62.     As a public accommodation which administers professional licensing examinations including the MBE, the NCBE is obligated to adhere to Title III of the ADA, which prohibits discrimination against individuals "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a).

63.     Title III specifies that unlawful discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii).

64.     Title III further requires "any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes" to "offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189.

65.     To ensure that "the key gateways to education and employment are open to individuals with disabilities," 28 C.F.R. part 36 app. B, examinations like the Bar Exam must be administered to an individual with a disability so that "the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills." *Id.* at § 36.309(b)(1)(i).

66.     The obligation to ensure disability nondiscrimination in testing includes an

1    obligation to ensure equal safety.

2        67.    Plaintiffs are qualified individuals who are entitled to participate in a fair, full and

3    equal basis in the remote administration of the bar exam, with their necessary testing

4    modifications.

5        68.    Allowing Plaintiffs to test remotely with their testing modifications would not

6    impose a fundamental alteration, but would even the playing field and allow Plaintiffs' aptitudes

7    and cognitive abilities to be fairly and accurately measured in an equally safe environment to

8    their nondisabled peers.

9        69.    In violation of Plaintiffs' right to be free from disability-based discrimination,

10   Defendant NCBE has adopted a policy of not permitting the use of alternative formats including

11   paper versions of the MBE for remote administrations.

12       70.    Under Defendant's policy, Plaintiffs are required to take the bar exam in person to

13   access the testing accommodations that all parties acknowledge they need, thereby risking their

14   health and subjecting themselves to anxiety related to COVID-19, while their non-disabled peers

15   are safely testing from home. Plaintiffs may test remotely only if they agree to forgo their

16   necessary testing accommodations. Either outcome is untenable.

17       71.    As a proximate result of the unlawful acts described herein, Plaintiffs have

18   suffered and continue to suffer injury.

19       72.    Defendant's unlawful actions were and are intentional, willful, malicious and/or

20   done with reckless disregard to Plaintiffs' right to be free from discrimination based on their

21   disabilities.

22       73.    Plaintiffs are entitled to injunctive and declaratory relief, including emergency

23   relief, and attorneys' fees and costs. Plaintiffs need and are entitled to extraordinary relief in

24   order to take the October 2020 California State Bar Examination remotely with their testing

25   accommodations.

26

27

28

1
2
3

### THIRD CLAIM FOR RELIEF
**Violation of the Unruh Civil Rights Act**
**California Civil Code § 51, *et seq.***
**against Defendant NCBE**

4      74.    Plaintiffs allege and incorporate by reference the allegations in the preceding
5  paragraphs.

6      75.    The Unruh Civil Rights Act requires that people with disabilities be provided
7  equal access to the accommodations, advantages, facilities, privileges, and services of all
8  business establishes of any kind whatsoever. Cal. Civ. Code §§ 51, *et seq.* Further, "[a] violation
9  of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law
10  101-336) … also constitute[s] a violation of [the Act]." Cal. Civ. Code § 51(f).

11      76.    Plaintiffs are persons with disabilities under California Government Code §
12  12926 and California Civil Code § 51, *et seq.*

13      77.    Defendant NCBE is a business establishment as that term is used in California
14  Civil Code § 51(b), and the administration, development, dissemination, and control of the MBE
15  is an accommodation, advantage, facility, privilege, and service of Defendant NCBE in
16  California.

17      78.    Defendant NCBE has and continues to violate the Unruh Civil Rights Act by
18  denying Plaintiffs full and equal access to the Bar Exam.

19      79.    As a proximate result of the unlawful acts described herein, Plaintiffs have
20  suffered and continue to suffer injury.

21      80.    Defendant's unlawful actions were and are intentional, willful, malicious and/or
22  done with reckless disregard to Plaintiffs' right to be free from discrimination based on their
23  disabilities.

24      81.    Plaintiffs are entitled to injunctive and declaratory relief, including emergency
25  relief, compensatory damages, and attorneys' fees and costs. Plaintiffs need and are entitled to
26  extraordinary relief in order to take the October 2020 California State Bar Examination remotely
27  with their testing accommodations.

28

## DECLARATORY RELIEF

82. Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

83. A present and actual controversy exists between Plaintiffs and Defendants concerning their rights and respective duties. Plaintiffs contend that Defendant STATE BAR violated their rights under Title II of the Americans with Disabilities Act. Plaintiffs further contend that Defendant NCBE violated their rights under Title III of the Americans with Disabilities Act and under California's Unruh Civil Rights Act. Plaintiffs are informed and believe, and thereon allege, that Defendants deny these allegations. Declaratory relief is therefore necessary and appropriate.

84. Plaintiffs seek a judicial declaration of the rights and duties of the respective parties.

## INJUNCTIVE RELIEF

85. Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

86. No plain adequate, or complete, remedy at law is available to Plaintiffs to redress the wrongs addressed herein.

87. By moving papers to be filed shortly, Plaintiffs seek emergency injunctive relief. If this court does not grant the injunctive relief sought below, Plaintiffs will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this court:

1. Issue emergency injunctive relief compelling Defendants to provide effective reasonable accommodations to Plaintiffs for the October 2020 Bar Exam, and to permit Plaintiffs to take the exam remotely with those reasonable accommodations in place;

2. Enjoin Defendants from engaging in the unlawful discrimination complained of herein;

3. Grant all injunctive relief necessary to bring Defendants into compliance with the

ADA and California law;

4.      Grant declaratory relief;

5.      Award compensatory damages for Plaintiffs' emotional pain and suffering, in an amount to be proven at trial;

6.      Award treble damages;

7.      Award statutory minimum damages;

8.      Award punitive damages;

9.      Order Defendants to pay Plaintiffs' reasonable attorneys' fees, reasonable expert witness fees, and other costs of this action;

10.     Award interest on damages, including pre- and post-judgment interest and an upward adjustment for inflation; and

11.     Grant such other and further relief as the court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand trial by jury of all claims and causes of action so triable.

Dated:  September 18, 2020

LEGAL AID AT WORK


By:   /s/ Jinny Kim
       Jinny Kim
       Attorneys for Plaintiff


DISABILITY RIGHTS EDUCATION AND
DEFENSE FUND


By:   /s/ Claudia Center
       Claudia Center
       Attorneys for Plaintiff