1   Maria Nugent, Bar No. 306074
    MNugent@perkinscoie.com
2   PERKINS COIE LLP
    505 Howard Street, Suite 1000
3   San Francisco, CA  94105-3204
    Telephone:  415.344.7000
4   Facsimile:  415.344.7050

5   Robert A. Burgoyne (*pro hac vice*)
    RBurgoyne@perkinscoie.com
6   PERKINS COIE LLP
    700 Thirteenth Street, N.W., Suite 800
7   Washington, D.C.  20005-3960
    Telephone:  202.654.6200
8   Facsimile:  202.654.6211

9   Attorneys for Defendant
    National Conference of Bar Examiners

10

11              **UNITED STATES DISTRICT COURT**

12            **NORTHERN DISTRICT OF CALIFORNIA**

13

14  KARA GORDON, *et al.*,                    Case No. 3:20-cv-06442

15              Plaintiffs,          **NATIONAL CONFERENCE OF BAR
                                     EXAMINERS' OPPOSITION TO MOTION
16      v.                           FOR TEMPORARY RESTRAINING
                                     ORDER AND PRELIMINARY
17  STATE BAR OF CALIFORNIA *et al.*,  INJUNCTION

18              Defendants.          Judge:  Magistrate Judge Laurel Beeler

19                                   Date:  September 29, 2020
                                     Time:  9:30 a.m.
20                                   Courtroom:  Videoconference

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE ISSUES TO BE DECIDED..................................................... 1

BACKGROUND ............................................................................................................. 2

     I.     The California Bar Examination and NCBE............................................ 2

     II.    Plaintiffs' allegations .................................................................................. 2

     III.   NCBE'S position on remote testing options for Plaintiffs...................... 3

ARGUMENT ................................................................................................................... 4

     I.     Plaintiffs have not satisfied the standards for issuance of a TRO or preliminary injunctive relief against NCBE............................................. 4

     II.    Plaintiffs are not likely to succeed on the merits of their claims .......................... 5

          A.    Plaintiffs lack standing to assert their claims against NCBE.................... 5

          B.    Plaintiffs are not likely to succeed on their ADA claim against NCBE.................................................................................... 8

     III.   Plaintiffs have not shown that they will suffer serious irreparable harm in the absence of mandatory preliminary injunctive relief........................................ 11

     IV.   The balance of hardships does not favor Plaintiffs ............................... 13

     V.    The public interest does not favor a TRO ........................................... 13

CONCLUSION ................................................................................................................ 14

-i-

1

## TABLE OF AUTHORITIES

**Page(s)**

2

3   CASES

4   *Anderson v. United States,*
5       612 F.2d 1112 (9th Cir. 1979)..................................................................................5

6   *Baer v. Nat'l Bd. of Med. Examiners,*
        392 F. Supp. 2d 42 (D. Mass. 2005) ......................................................................12
7
    *Caribbean Marine Servs. Co., Inc. v. Baldridge,*
8       844 F.2d 668 (9th Cir. 1988)..................................................................................12

9   *Chapman v. Pier 1 Imports (U.S.) Inc.,*
        631 F.3d 939 (9th Cir. 2011)....................................................................................8
10
    *Enyart v. NCBE,*
11      630 F.3d 1153 (9th Cir. 2011)...........................................................................10, 12

12  *Fleck & Assocs., Inc. v. Phoenix,*
        471 F.3d 1100 (9th Cir. 2006)..................................................................................8
13
    *Garcia v. Google Inc.,*
14      786 F.3d 733 (9th Cir. 2015)....................................................................................5
15
    *Lincoln v. CERCPAC v. Health & Hospitals Corp.,*
16      920 F. Supp. 488 (S.D.N.Y. 1996).........................................................................13

17  *Los Angeles Mem'l Coliseum Comm. v. Nat'l Football League,*
        634 F.2d 1197 (9th Cir. 1980)................................................................................13
18
    *Lujan v. Defenders of Wildlife,*
19      504 U.S. 555 (1992).............................................................................................5, 7
20
    *Nat'l Conf. of Bar Exam'rs v. Saccuzzo,*
21      No. 03CV0737, 2003 WL 21467772 (S.D. Cal. 2003).............................................4

22  *Okpalobi v. Foster,*
        244 F.3d 405 (5th Cir. 2001)....................................................................................7
23
    *Pazer v. N.Y. State Bd. of Law Examiners,*
24      849 F. Supp. 284 (S.D.N.Y. 1994).........................................................................12
25
    *Sacuzzo v. Nat'l Conf. of Bar Examiners,*
26      No. 03CV0737, 2003 WL 21467772 (S.D. Cal. 2003).............................................4

27  *Smith v. Block,*
        784 F.2d 993 (9th Cir. 1986)....................................................................................7
28

-ii-

CASE NO.: 3:20-CV-06442; NATIONAL CONFERENCE OF BAR EXAMINERS' OPPOSITION TO MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

149621592.1

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Stanley v. Univ. of S. California*,
    13 F.3d 1313 (9th Cir. 1994).................................................................5

*Turner v. Ass'n of Am. Med. Colleges*,
    167 Cal. App. 4th 1401 (Cal. Ct. App. 2008) ...........................................11

*Univ. of Texas v. Camenisch*,
    451 U.S. 390 (1981).........................................................................5

*Walker v. Cty. of Santa Clara*,
    No. 5:10-cv-4668, 2011 WL 4344212 (N.D. Cal. 2011) .............................4

*Windermere Holdings, LLC v. U.S. Wall Decor, LLC*,
    No. C 10–03955-LB, 2011 WL 133023 (N.D. Cal. 2011) ...........................1

*Winter v. National Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)........................................................................4, 14

**STATUTES**

29 U.S.C. § 794...............................................................................9

42 U.S.C. § 12181(7)......................................................................8, 9

42 U.S.C. § 12182..........................................................................8, 9

42 U.S.C. § 12182(b)(2)(A)(ii)..............................................................8

42 U.S.C. § 12189.................................................................1, 9, 10, 11

Cal. Civ. Code § 51(f).........................................................................1

**RULES**

Fed. R. Civ. P. 12(h)(3)......................................................................8

Fed. R. Civ. P. 65(c)........................................................................14

**REGULATIONS**

28 C.F.R. § 36.102(a).........................................................................9

**OTHER AUTHORITIES**

82 Fed. Reg. 6388 (Jan. 19, 2017) .........................................................9

-iii-

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

H.R. Rep. No. 101-485(III) (1990) ................................................................9

U.S. Dep't of Justice, U.S. Attorneys Manual ¶ 8-2.400 (updated Dec. 7, 2018) ...........................9

1

## <u>STATEMENT OF THE ISSUES TO BE DECIDED</u>

2

For multiple reasons, Plaintiffs are not entitled to emergency mandatory injunctive relief

3
against Defendant National Conference of Bar Examiners ("NCBE").

4
Plaintiffs allege that they are being discriminated against on the basis of disability because

5
they are purportedly being required to test in person when they take the October 2020 California

6
bar exam.  Decisions on whether and how Plaintiffs will test are made by the State Bar of California

7
("State Bar"), not NCBE.  Plaintiffs' alleged injuries were not caused by NCBE, nor can they be

8
redressed through any injunction imposed on NCBE.  Plaintiffs therefore lack standing to sue

9
NCBE.

10
Plaintiffs also fail to show a substantial likelihood of success on the merits of their claims

11
against NCBE.  Contrary to what Plaintiffs allege, Amended Complaint ¶ 62, NCBE is not a "public

12
accommodation" under Title III of the ADA.  NCBE is subject to a specific provision in Title III

13
of the ADA applicable to private entities that offer certain types of examinations, including

14
licensing examinations (42 U.S.C. § 12189).  Section 12189 requires covered entities to "offer such

15
examinations ... in a place and manner accessible to persons with disabilities or offer alternative

16
accessible arrangements for such individuals."  To the extent that provision applies to NCBE in the

17
present context--where the exam Plaintiffs have registered to take is the California bar exam, and

18
their requests for disability-based accommodations were made to and decided by the State Bar--

19
NCBE has satisfied any obligation it may have under that provision by making the Multistate Bar

20
Examination ("MBE") available to the State Bar for use as a component of the California bar

21
examination in alternative formats that can be administered to Plaintiffs in an accessible place and

22
manner.

23
Plaintiffs also fail to satisfy the remaining requirements for mandatory emergency relief

24
against NCBE.  They have not demonstrated a threat of irreparable harm in the absence of a TRO

25
or preliminary injunction, and they ignore the fact that they seek compensatory damages, statutory

26
damages and punitive damages from NCBE.  *See, e.g., Windermere Holdings, LLC v. U.S. Wall*

27
*Decor, LLC*, No. C 10–03955-LB, 2011 WL 133023, *4 (N.D. Cal. 2011) ("Where money damages

28

are available, the harm is not ordinarily irreparable such that preliminary injunctive relief is appropriate."). The balance of harms and public interest also do not favor Plaintiffs.

Plaintiffs have not satisfied their burden to show that any relief from NCBE is warranted, and their motion for a temporary restraining order and preliminary injunction should be denied.

## BACKGROUND

### I.    The California Bar Examination and NCBE

NCBE is a non-profit entity based in Wisconsin. Among other activities, NCBE develops various standardized tests that jurisdictions can choose to use, at their election, as part of their bar admission process. *See* Declaration of Beth Hill ("Hill Decl.") ¶ 4. One of those exams is the MBE.

Plaintiffs' claims relate to the State Bar of California's General Bar Examination ("California bar examination"). The State Bar of California currently uses the MBE as one component of the California bar examination. *See id.* ¶ 5. The State Bar administers the MBE to individuals taking the California bar examination, and individuals who take the MBE as a component of the California bar examination register to do so with the State Bar, not NCBE. *See id.* ¶¶ 8-9.

### II.   Plaintiffs' allegations

Plaintiffs are three individuals who will be taking the upcoming California bar examination. "Offered twice a year in July and February, the [California] bar exam typically consists of two major components: a 200-item multiple-choice test called the Multistate Bar Examination ('MBE') administered on the first day of the exam, and a five-item essay test and one-item performance test disseminated by the STATE BAR on the second day." First Amended Complaint ("Complaint") ¶ 2. The July 2020 bar examination was rescheduled to October 5 and 6, 2020, in response to the COVID-19 pandemic. *See id.* ¶ 3.

Plaintiffs were approved by the State Bar to receive various disability-based testing accommodations on the California bar examination. *See id.* ¶ 6. The California bar examination is being administered remotely for many examinees, although some examinees will be testing in person, including individuals who are not receiving testing accommodations. *See id.* ¶¶ 4-5, 7; *see*

*also* October 2020 Bar Exam FAQs at 14 (cited at Complaint n.1). The State Bar planned and arranged the logistics for the remote administration of the California bar examination. *See id.* ¶¶ 23-24. Plaintiffs allege that they "have requested that the STATE BAR permit them to participate in the remote administration of the bar exam with their necessary testing accommodations. However, according to the STATE BAR, unless Plaintiff waive their rights to their necessary and approved testing accommodations, they will be required to sit for the bar exam in person." Complaint ¶ 8.

The MBE is one component of the California bar examination. According to Plaintiffs, "NCBE disseminates the Multistate Bar Examination (MBE) to jurisdictions like California that use the examinations as a component of their bar examinations, and it determines and controls the formats in which the MBE is offered and administered." *Id.* ¶ 18. In light of the COVID-19 pandemic, and pursuant to a Memorandum of Understanding ("MOU") between NCBE and each jurisdiction that uses the MBE as part of their bar exam, NCBE has agreed to make an abbreviated version of the MBE available to jurisdictions, including California, that they can administer remotely as part of their bar examinations if they choose to do so. *See* Hill Decl. Ex. A. NCBE has also made the MBE available in nonstandard formats upon request. *See id.* Plaintiffs allege that the MOU from NCBE requires individuals testing with non-standard test materials to test in person, but also admit "on information and belief" that "NCBE is waiving this requirement when requested by state bars." Complaint ¶ 27.

## III.   NCBE'S position on remote testing options for Plaintiffs

As reflected in the MOU, NCBE has offered to make the MBE available to the State Bar in a number of formats for administration as part of the October bar examination, including both an electronic format and a paper-based format. *See* Hill Decl. ¶¶ 12-14. Although the MOU requires nonstandard NCBE test materials (including paper tests) to be proctored in person, *see id.* Ex. A, NCBE has authorized the California State Bar to offer paper-based administrations of the MBE in

-3-

CASE NO.: 3:20-cv-06442; NATIONAL CONFERENCE OF BAR EXAMINERS' OPPOSITION TO MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
149621592.1

a remote setting, provided that reasonable procedures are put in place to protect the confidentiality

of NCBE's secure test content.  *See id.* ¶¶ 16-19 and Exs. B-E[1]

NCBE recognizes, however, the State Bar's independent role in determining how it will

administer its bar examination so as to fulfill its important mission in licensing lawyers in the State

of California.  Exam security is a critical part of ensuring the fairness and integrity of any

examination that is used as part of a state's process for licensing professionals and protecting the

general public.

## ARGUMENT

NCBE is not a proper party to this lawsuit and should not have been included as a defendant.

Plaintiffs' concerns regarding the administration of the California bar examination must be resolved

with the State Bar.  Plaintiffs do not have standing to pursue relief against NCBE and have not

shown any likelihood of success on the merits of their claims against NCBE.  Plaintiffs also have

not demonstrated a likelihood of irreparable injury if they do not obtain the emergency injunctive

relief they seek, and neither the public interest nor the balance of harms favor Plaintiffs with respect

to their claims against NCBE.

**I.**     **Plaintiffs have not satisfied the standards for issuance of a TRO or preliminary injunctive relief against NCBE.**

The same general standards apply to requests for temporary restraining orders and motions

preliminary injunctions.  *See Walker v. Cty. of Santa Clara*, No. 5:10-cv-4668, 2011 WL 4344212,

at *2 (N.D. Cal. 2011).  A preliminary injunction is an "extraordinary remedy" and Plaintiffs must

make a "clear showing" that they are entitled to such relief.  *Winter v. National Res. Def. Council,*

*Inc.*, 555 U.S. 7, 22 (2008).  Plaintiffs must establish that they are likely to succeed on the merits,

---

[1]   Questions appearing on a given form of the MBE are routinely re-used on future forms of the exam.  *See* Hill Decl. ¶ 6; *see also Nat'l Conf. of Bar Exam'rs v. Saccuzzo*, No. 03CV0737, 2003 WL 21467772, *2-3 (S.D. Cal. 2003) (noting that MBE questions are confidential and routinely re-used; that the "development of MBE test questions and test forms is a lengthy, painstaking, and expensive process involving subject matter drafting committees that are made up of law professors, practitioners, and judges;" that it "costs NCBE hundreds of thousands of dollars to develop each 200-question MBE test form;" and that the "[u]nauthorized disclosure of secure test items may compromise the integrity of the applicable examination(s), and potentially other examinations which incorporate compromised equator questions; may jeopardize the validity of resulting scores; and may give some examinees an unfair advantage over other examinees").

-4-

CASE NO.: 3:20-CV-06442; NATIONAL CONFERENCE OF BAR EXAMINERS' OPPOSITION TO MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
149621592.1

1   likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities

2   tips in their favor, and that an injunction is in the public interest. *Id.* at 20. "The purpose of a

3   preliminary injunction is merely to preserve the relative positions of the parties until a trial on the

4   merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

5          Where, as here, plaintiffs seek mandatory relief that would alter the status quo, this standard

6   is heightened. "A mandatory injunction 'goes well beyond simply maintaining the status quo

7   pendente lite [and] is particularly disfavored.'" *Stanley v. Univ. of S. California*, 13 F.3d 1313,

8   1320 (9th Cir. 1994) (citations omitted). Mandatory preliminary relief "should not be issued unless

9   the facts and law clearly favor the moving party." *Anderson v. United States*, 612 F.2d 1112, 1114

10   (9th Cir. 1979) (citations omitted); *see also Garcia v. Google Inc.*, 786 F.3d 733, 740 (9th Cir.

11   2015) ("[Plaintiff's] burden here is doubly demanding: Because [she] seeks a mandatory

12   injunction, she must establish that the law and facts clearly favor her position, not simply that she

13   is likely to succeed.").

14          As set forth below, Plaintiffs do not meet the standards for a "preserve the status quo" TRO

15   or preliminary injunction against NCBE, and most certainly do not meet the heightened standards

16   for mandatory preliminary relief.

17   **II.      Plaintiffs are not likely to succeed on the merits of their claims**

18          **A.      Plaintiffs lack standing to assert their claims against NCBE**

19          Plaintiffs have the burden of establishing Article III standing, and must establish all three

20   elements of standing: (1) an injury in fact, which is concrete and particularized, actual and

21   imminent, and not conjectural or hypothetical; (2) a causal connection between the injury and the

22   conduct complained of, traceable to the actions of the defendant; and (3) a likelihood that the injury

23   will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61

24   (1992).

25          Plaintiffs have not, and cannot, establish standing to assert their claims against NCBE. First,

26   their own allegations reflect that the decisions they are challenging were made by the California

27   State Bar, not NCBE, and therefore are not "fairly traceable" to NCBE:

28

- "In response to the directive of the California Supreme Court, the STATE BAR designed a remote administration of the bar exam for virtually all test-takers."  Complaint ¶ 4.

- "In planning and designing this remote administration, the STATE BAR disregarded the needs and rights of a small number of test takers with disabilities like Plaintiffs.  Instead of implementing … solutions to allow these test takers to participate in the remote administration of the bar exam, the STATE BAR is requiring these disabled test takers to travel to and participate in an in-person administration of the bar exam.  The two-tiered system adopted by the STATE BAR is unfair and dangerous to the Plaintiffs…."  Complaint ¶ 5.

- "Plaintiffs are law school graduates with disabilities who require and who have been approved by the STATE BAR for certain testing accommodations…."  Complaint ¶ 6.

- "As the STATE BAR has detailed in a series of changing FAQs, the following disabled test takers are excluded from the remote administration of the bar exam…."  Complaint ¶ 7.

- "Plaintiffs have requested that the STATE BAR permit them to participate in the remote administration of the bar exam with their necessary testing accommodations.  However, according to the STATE BAR, unless Plaintiffs waiver their rights to their necessary and approved testing accommodations, they will be required to sit for the bar exam in person."  Complaint ¶ 8.

Indeed, the Plaintiffs allege "on information and belief" that NCBE would waive the requirement in its MOU for in-person testing for test takers who receive non-standard test materials for use on the October bar exam if requested by the State Bar.  Complaint ¶ 27.  Plaintiffs are correct in this regard, *see* Hill Decl. ¶ 19 and Ex. E, which should have led them (and should now cause them) to conclude that they have no dispute with or claim against NCBE.  Their allegation that NCBE has somehow violated the ADA or the Unruh Civil Rights Act and that NCBE's purported "unlawful actions were and are intentional, willful, malicious and/or done with reckless disregard to Plaintiffs' right to be free from discrimination based on their disabilities," Complaint ¶¶ 69-72, 78-80, are unfounded and spurious.

NCBE develops and provides the MBE to the State Bar for it to administer as part of the California bar examination. It has made the MBE available for remote-proctored administration. *See* Hill Decl. Ex. A. NCBE has also made the MBE available in alternative formats, including a paper-and-pencil format. *See id.* It has also given the State Bar the option of allowing Plaintiffs to test remotely with their alternative test formats and other requested accommodations. *See* Hill Decl. ¶¶ 12-19. The decision whether or not to allow one or more of the Plaintiffs to test remotely is not traceable to NCBE. (Plaintiffs also have the option, of course, to test in person using the accommodations for which they have been approved by the State Bar.)

For these same reasons, Plaintiffs have not, and cannot show any likelihood that their alleged injury would be redressed by a judgment against NCBE. *See Lujan*, 504 U.S. at 561. NCBE does not control who takes the California bar examination with accommodations or how those accommodations will be administered. *See supra* at 5-7. NCBE has already agreed to make the MBE available to the State Bar in formats that would allow the Plaintiffs to take the MBE with their requested accommodations (in person or remotely) and has agreed that the MBE can be administered remotely to the Plaintiffs if reasonable security measures are implemented, notwithstanding the MOU's requirement of in-person proctoring. *See* Hill Decl. ¶ 19 and Ex. E. NCBE has no control over whether the State Bar believes it is appropriate for a given individual to test using an exam format that NCBE has agreed to make available, based upon the State Bar's independent determination of the feasibility, security and appropriateness of such an exam administration. Any injunctive relief against NCBE would therefore be meaningless. *See Smith v. Block*, 784 F.2d 993, 995-96 (9th Cir. 1986) (plaintiffs failed to show that injury was traceable to defendant's conduct or could be redressed by injunctive relief where third party foreclosed on plaintiffs' property); *Okpalobi v. Foster*, 244 F.3d 405, 426-28 (5th Cir. 2001) (finding no causation or redressability where defendant did not cause the allege injury and did not have power to redress the injury: "the injunction granted by the district court is utterly meaningless" and holding district court lacked Article III jurisdiction to hear claim).

Putting aside whether Plaintiffs have even shown injury in this case for standing purposes, they lack standing to bring their ADA and Unruh Act claims against NCBE because they cannot,

at a minimum, establish causation and redressability with respect to NCBE, two of the three required elements of Article III standing.  Their motion for a TRO or preliminary injunction against NCBE must be denied and NCBE should be dismissed as a defendant.  *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Fleck & Assocs., Inc. v. Phoenix*, 471 F.3d 1100, 1106 n.4 (9th Cir. 2006) ("[N]o matter how important the issue, a court lacking jurisdiction is powerless to reach the merits under Article III of the Constitution....[S]ince standing is an aspect of subject matter jurisdiction, the district court was free to reach the issue *sua sponte*....").[2]

**B.      Plaintiffs are not likely to succeed on their ADA claim against NCBE**

In addition to their lack of standing, Plaintiffs have failed to state a claim against NCBE and therefore have not shown a likelihood of success on the merits of their claims.

Plaintiffs allege that NCBE is a public accommodation subject to the general "non-discrimination" requirement found in Title III of the ADA, 42 U.S.C. §§ 12182(a) and 12182(b)(2)(A)(ii).  *See* Complaint ¶¶ 60-61.  This is not correct.

Title III of the ADA includes a provision that prohibits discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations *of any place of public accommodation* by any person who owns, leases (or leases to), or operates *a place of public accommodation*.  42 U.S.C. § 12182(a).  Plaintiffs allege that NCBE is a public accommodation, *see* Complaint ¶ 17 (citing 42 U.S.C. § 12181(7)), but they do not, and cannot, allege facts showing that NCBE is, in fact, a "place of public accommodation."

Title III of the ADA covers "Public Accommodations **and** Services Operated by Private Entities." (Emphasis added.)    The statutory provision in Title III that addresses "public accommodations" is 42 U.S.C. § 12182.  The statute identifies 12 exclusive categories of entities

---

[2] Plaintiffs also improperly attempt to seek relief on behalf of unknown third parties. *See* Plaintiffs' Proposed Order (Dkt. 37) (seeking an injunction "[r]equiring other test takers with disability who are approved for paper copies of the exam and/or unscheduled bathroom breaks to take the California Bar Exam in person instead of remotely with the accommodations to which they have been granted.").  They do not have standing to do so.  *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 949 (9th Cir. 2011) ("Article III … requires a sufficient showing of likely injury in the future related to the plaintiff's disability to ensure that injunctive relief will vindicate the rights of the particular plaintiff rather than the rights of third parties.").

that qualify as public accommodations within the meaning of the ADA, and private testing entities like NCBE are **not** among those categories.  *See* 42 U.S.C. § 12181(7).

Instead, "private entities" like NCBE are governed by a separate provision in Title III, 42 U.S.C. § 12189.  Under Section 12189, any private entity that "offers examinations ... related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations ...  in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals."  It is precisely because private testing entities like NCBE are not covered by other provisions of the ADA (including the "public accommodations" provision) or by Section 504 of the Rehabilitation Act (29 U.S.C. § 794) that Congress added a separate provision to the ADA to govern private testing entities, 42 U.S.C. § 12189.  *See* H.R. Rep. No. 101-485(III), at 68-69 (1990) (explaining that Section 12189 was added to the ADA to "fill a gap which is created when licensing, certification and other testing authorities are not covered by the ... Rehabilitation Act or title II of the ADA....").

The U.S. Department of Justice enforces Title III of the ADA.  DOJ's Title III implementing regulations note at the outset the distinction between private testing entities and public accommodations.  *See* 28 C.F.R. § 36.102(a) ("This part applies to any (1) Public accommodation; (2) Commercial facility; or (3) Private entity that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes.").  Similarly, in a 2017 Notice of Proposed Rulemaking involving new regulations under Section 504 of the Rehabilitation Act, DOJ discussed the relationship between Section 504 and the ADA and summarized Title III of the ADA as follows:  "Title III prohibits discrimination on the basis of disability by: (1) public accommodations (ie, private entities that own, operate, lease or lease to places of public accommodation); (2) newly constructed and altered commercial facilities; and (3) private entities that offer certain examinations and courses related to educational and occupational certification."  82 Fed. Reg. 6388, 6390 n.2 (Jan 19, 2017).  As reflected in this summary, "private entities that offer examinations" are not "public accommodations" under the ADA.  *See also* U.S. Dep't of Justice, U.S. Attorneys Manual ¶ 8-2.400 (updated Dec. 7, 2018) ("Title I [of the ADA] prohibits discrimination on the basis of

1    disability in employment; Title II prohibits such discrimination in the provision of all programs,

2    activities, and services of state and local government, including public transportation; and Title III

3    prohibits such discrimination by public accommodations, commercial facilities, and entities that

4    offer courses or examinations related to professional or educational certification.").

5           In their TRO motion, Plaintiffs cite *Enyart v. NCBE*, 630 F.3d 1153 (9th Cir. 2011), in

6    support of the broad proposition that NCBE is "governed by [Title III] of the [ADA]."  TRO Mot.

7    at 18.[3]  What *Enyart* actually reflects is that NCBE is governed by 42 U.S.C. § 12189.  *See* 630

8    F.3d at 1160.  As noted, Section 12189 requires NCBE to offers its exams in a place and manner

9    "accessible" to disabled individuals or to offer "alternative accessible arrangements."  The MBE

10   has clearly been offered for administration to the plaintiffs in this case in an accessible place and

11   manner.  NCBE has informed the State Bar that it will make the MBE available to the State Bar in

12   a paper or electronic format as to which extra testing time and breaks can be given if those

13   accommodations have been approved by the State Bar.  *See* Hill Decl. ¶ 19 and Ex. E.  NCBE has

14   informed the State Bar that, notwithstanding the MOU, the Plaintiffs can take the MBE with their

15   approved accommodations in a remote setting if reasonable security measures are implemented.

16   Unlike in *Enyart*, the format of the MBE is not at issue in this case from NCBE's perspective—the

17   MBE can be made available in electronic or paper-based formats that would allow Plaintiffs to test

18   with their approved accommodations.

19          Plaintiffs' own arguments show that their claim against NCBE is misguided.  First, they

20   contend that "Defendant's in-person requirement facially discriminates against disabled test-

21   takers…."  TRO Mot. at 18-19.  Putting aside whether this argument has any merit, they provide

22   no facts or evidence showing that this is an NCBE requirement.  *See id.*  The two cases they cite in

23   support of their "facial discrimination" argument, moreover, both involve public entities and

24   address Title II of the ADA (NCBE is not a public entity subject to Title II of the ADA).  *See id.*

25   _____

26   [3] Plaintiffs assert that "[t]he State Bar and NCBE are governed by Titles II and III of the [ADA]."
     TRO Mot. at 18.  This statement could be misleading as phrased.  NCBE is not subject to Title II
27   of the ADA, which applies to state and local governments.  *See Enyart*, 630 F.3d at 1160.  Likewise,
     the State Bar is not subject to Title III of the ADA.  *See id.*  In their Complaint, Plaintiffs assert
28   their Title II claim solely against the State Bar, and assert their Title III solely claim against NCBE.
     *See* Complaint ¶¶ 47-71.

-10-

1    (citing *Bay Area Additional Research & Treatment, Inc. v. City of Antioch* and *MX Group, Inc. v.*

2    *City of Covington*).

3    Second, Plaintiffs argue that, under regulations implementing 42 U.S.C. § 12189, NCBE

4    must offer alternative arrangements "'at equally convenient locations, as often, and in as timely a

5    manner as are other examinations'" and "'must provide comparable conditions to those provided

6    for nondisabled individuals.'"  TRO Mot. at 20.  Again, to the extent those issues are controlled by

7    NCBE, NCBE has done all of this.  Indeed, Plaintiffs' argument repeatedly refers to actions that

8    the California Bar allegedly can or cannot take, not NCBE.  *See* TRO Mot. at 19-22 ("The State

9    Bar Can Permit Plaintiffs to Participate in the Remote Administration With Their Testing

10   Accommodations…"; "federal courts have required Title II entities to provide alternative locations

11   where the original ones were inaccessible in various contexts."; "the in-person requirement forces

12   disabled test takers to bear the burden of the State Bar's continued administration of the bar exam

13   during the pandemic").[4]

14   Plaintiffs have failed to state a viable ADA claim against NCBE.[5]

15   **III.    Plaintiffs have not shown that they will suffer serious irreparable harm in the**
         **absence of mandatory preliminary injunctive relief**

16

     Plaintiffs identify three alleged irreparable harms from having to take the bar examination

17

18   in person: (1) "serious illness or death from the increased risk of infection of COVID-19"; (2)

19

20   [4] Plaintiffs cite numerous cases arising under Title I (employment discrimination) or Title II of the
     ADA, none of which apply to NCBE.  *See* TRO Mot. 20-22 (citing *Buckingham v. U.S.*, *Humphrey*

21   *v. Mem'l Hosps. Ass'n*, *Langon v. Dep't of Health and Human Servs.*, *Hernandez v. City of*
     *Monterey*, *Pierce v. Cty. of Orange*, and *Tyler v. City of Manhattan*).

22
     [5] Plaintiffs' complaint asserts claims against NCBE under the ADA and the Unruh Act, but they

23   rely solely on their ADA claims in seeking preliminary injunctive relief.  TRO Mot. at 18-22.  In
     all events, their Unruh Act claim would not support such relief.  Because Plaintiffs have no viable

24   ADA claim against NCBE, they have failed to state a viable Unruh Act claim against NCBE under
     the Unruh Act provision that makes a violation of the ADA a violation of the Unruh Act, *see* Cal.

25   Civ. Code § 51(f); nor can they establish any alternative theory for stating a viable claim against
     NCBE under the Unruh Act, *cf. Turner v. Ass'n of Am. Med. Colleges*, 167 Cal. App. 4th 1401,

26   1409 (Cal. Ct. App. 2008) ("Whatever entitlements the plaintiffs may have to testing
     accommodations under other civil rights statutes, the trial court erred in concluding that AAMC's

27   standardized procedures implicate the Unruh Act, at least as applied to individuals with learning
     and reading-related disabilities seeking additional time or similar performance-related

28   accommodations when taking the MCAT.").

-11-

CASE NO.: 3:20-CV-06442; NATIONAL CONFERENCE OF BAR EXAMINERS' OPPOSITION TO MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
149621592.1

1    "failing the exam"; and (3) "Plaintiffs' loss of opportunity to pursue their chosen profession."  TRO

2    Mot. at 22.

3           NCBE recognizes that the COVID-19 pandemic is a serious public health crisis.  Plaintiffs'

4    argument that they might suffer "serious illness or death" if they test in person, however, even with

5    protective measures in place at the testing location, is speculative.  "Speculative injury does not

6    constitute irreparable injury sufficient to warrant granting a preliminary injunction."  *Caribbean*

7    *Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted).

8           Plaintiffs' prediction that they may fail the exam if they had to test outside of their home is

9    equally speculative and legally insufficient.  *See Baer v. Nat'l Bd. of Med. Examiners*, 392 F. Supp.

10   2d 42, 48-49 (D. Mass. 2005) ("[I]t is not certain she will suffer the predicted harm; she may pass

11   the test …. ").

12          And Plaintiffs' "loss of opportunity" argument does not fit the facts of this case.  Unlike the

13   plaintiff in *Enyart*, Plaintiffs are able to test with their requested accommodations.  Plaintiffs also

14   do not allege that they will lose their jobs if they do not take and pass the California bar examination

15   this October.  *See Pazer v. N.Y. State Bd. of Law Examiners*, 849 F. Supp. 284, 287-88 (S.D.N.Y.

16   1994) (plaintiff, who "was already gainfully employed as a first-year associate," would not suffer

17   irreparable harm if he could not take the upcoming bar exam with his requested accommodations).

18   Plaintiff Gordon is already employed and states that she will be returning to her job in October.

19   *See* Gordon Decl. ¶ 12.  Plaintiff Callejo-Brighton's testimony is vague:  she explains that she is

20   required to take, and "hopefully pass," the bar examination in October as a condition of her

21   fellowship.  *See* Callejo-Brighton Decl. ¶ 2.  Plaintiff Doe states that he "need[s] to gain licensure

22   to practice law to secure employment," but he does not explain why he could not start working in

23   advance of obtaining a license (as prospective attorneys often do) or why he could not secure other

24   employment pending licensure as an attorney.  *See* Doe Decl. ¶ 28.

25          Moreover, the State Bar website indicates that it is "expedit[ing] creation of a provisional

26   licensure program under supervision for 2020 law school graduates—effective at least until June

27   1,  2022,  or  until  they  can  take  and  pass  a  California  bar  exam."  *See*

28   www.calbar.ca.gov/Admissions; *see also* Proposed Provisional Licensing Program FAQs, *at*

-12-

CASE NO.: 3:20-cv-06442; NATIONAL CONFERENCE OF BAR EXAMINERS' OPPOSITION TO MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
149621592.1

www.calbar.ca.gov/Portals/0/documents/admissions/Provisional-License-FAQs.pdf. Such

provisional licensure would appear to preclude any claim of irreparable harm from not being able

to take the California bar examination in October 2020.

Plaintiffs also argue that "irreparable harm may be presumed" because they allege that

NCBE's practices are prohibited by a federal statute that provides for injunctive relief. TRO Mot.

at 23. "[N]o case law has been found to support the idea that merely *alleging* violations of the

ADA ..., without more, establishes irreparable injury." *Lincoln v. CERCPAC v. Health &

Hospitals Corp.*, 920 F. Supp. 488, 495-96 (S.D.N.Y. 1996) (emphasis added). This is especially

true here where, as discussed above, Plaintiffs have not shown a likelihood of success on the merits.

Finally, Plaintiffs are seeking damages against NCBE under the Unruh Civil Rights Act,

*see* Complaint ¶ 79, and their Unruh Act claim is based on the same allegations underlying their

ADA claim. *See id.* ¶¶ 72-79. Damages are available under the Unruh Act. *See id.* ¶¶ 79. If

Plaintiffs believe that NCBE is subject to the Unruh Act and liable under that statute, the availability

of damages defeats their claim of irreparable harm in the absence of injunctive relief. *See, e.g., Los

Angeles Mem'l Coliseum Comm. v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980).

**IV.    The balance of hardships does not favor Plaintiffs**

Plaintiffs argue that the balance of hardships weighs in their favor, notwithstanding the

defendants' legitimate concerns over test security and the integrity of the bar admission process.

They argue that "[n]othing is more valuable than the opportunity to save a human life," TRO Mot.

at 23, but this assumes that taking the October bar examination is a life-or-death situation, and that

Plaintiffs must take the bar exam in October. If Plaintiffs are uncomfortable with their testing

environment, they can wait to test later.

Plaintiffs also discount the important and legitimate concerns of the State Bar in

administering its bar examination in a manner that it believes is appropriate.

**V.    The public interest does not favor a TRO**

Plaintiffs' claim that their requested TRO would serve the "public interest in preventing

widespread COVID-19 transmission," TRO Mot. at 24, but this assumes they would contract

-13-

CASE NO.: 3:20-cv-06442; NATIONAL CONFERENCE OF BAR EXAMINERS' OPPOSITION TO MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
149621592.1

1  COVID-19 if they tested in person, which in turn would necessarily lead to widespread COVID-19

2  transmission, even when appropriate precautions are taken.

3       Plaintiffs' only other argument is that the ADA reflects a public interest in eliminating

4  discrimination.  *See* TRO Mot. at 24.  But all statutes presumably further a public interest, and such

5  argument would presumably eliminate the public interest requirement for any preliminary

6  injunction motion involving statutory claims, which would not be proper under *Winter*.

7  **CONCLUSION**

8       Plaintiffs' request for a TRO and preliminary injunction against NCBE should be denied.

9  If the Court agrees that the Plaintiffs lack standing to assert any claims against NCBE, NCBE

10  should be dismissed from this lawsuit for lack of subject matter jurisdiction.

11  DATED:  September 22, 2020         **PERKINS COIE LLP**

12

13         By:  /s/ Maria Nugent
          Maria Nugent, Bar No. 306074

14            MNugent@perkinscoie.com
          PERKINS COIE LLP

15            505 Howard Street, Suite 1000
          San Francisco, CA  94105-3204

16            Telephone:  415.344.7000
          Facsimile:  415.344.7050

17            Robert A. Burgoyne (*pro hac vice*)

18            RBurgoyne@perkinscoie.com
          PERKINS COIE LLP

19            700 Thirteenth Street, N.W., Suite 800
          Washington, D.C.  20005-3960

20            Telephone:  202.654.6200
          Facsimile:  202.654.6211

21            Attorneys for Defendant

22            National Conference of Bar Examiners

23

24

25

26

27

28