1  VANESSA L. HOLTON (111613)
   General Counsel
2  ROBERT G. RETANA (148677)
   Deputy General Counsel
3  JAMES J. CHANG (287008)
   Assistant General Counsel
4  CAROLINE W. HOLMES (299116)
   Assistant General Counsel
5  OFFICE OF GENERAL COUNSEL
   THE STATE BAR OF CALIFORNIA
6  180 Howard Street
   San Francisco, CA 94105-1639
7  Tel: (415) 538-2381
   Fax: (415) 538-2321
8  Email: james.chang@calbar.ca.gov
9
10 Attorneys for Defendants State Bar of California
   and Donna Hershkowitz
11

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14

15 KARA GORDON, ISABEL CALLEJO-          Case No.  3:20-cv-06442-LB
   BRIGHTON and JOHN DOE,
16                                        **DEFENDANTS STATE BAR OF**
                                          **CALIFORNIA AND DONNA**
17                                        **HERSHKOWITZ'S OPPOSITION TO**
                                          **PLAINTIFFS' MOTION FOR**
18          Plaintiffs,                   **PRELIMINARY INJUNCTION**

19 v.                                      Date:        September 29, 2020
                                           Time:        9:30 a.m.
20 STATE BAR OF CALIFORNIA, DONNA          Courtroom: Videoconference
   HERSHKOWITZ, and NATIONAL
21 CONFERENCE OF BAR EXAMINERS,            Judge: Magistrate Judge Laurel Beeler

22

23          Defendants.

24

25

26

27

28

# TABLE OF CONTENTS

I.     INTRODUCTION.................................................................................................. 1

II.    STATEMENT OF FACTS .................................................................................... 2

     A.    The State Bar Administers the Bar Examination at the Direction of the California Supreme Court. ................................................................................ 2

     B.    The State Bar's Extraordinary Efforts to Ensure Continuing Access to the Legal Profession During the Pandemic................................................... 3

     C.    The Requirements of the Remote Exam Format.......................................... 4

     D.    Maintaining the Security and Validity of the Remote Exam Format. .......... 5

        1.    All Remote Test-Takers Must Agree to Stay In View of Their Web Cameras For the Duration of All Testing Sessions. ............................. 6

        2.    All Remote Test-Takers Must Agree Not to Have Physical Scratch Paper During the Essay Portion of the Bar Exam. .............................. 7

        3.    Password-Protected, Timed Delivery of the Bar Exam Through the ExamSoft Software Program. ............................................................. 7

     E.    The Bar Exam Will Also Be Offered Through an In-Person Format to Ensure Full Access. ................................................................................... 8

     F.    The Distribution of Test-Takers Across the Remote and In-Person Formats. ..................................................................................................... 8

     G.    Plaintiffs' Assigned Testing Formats........................................................... 9

     H.    The State Bar Has Implemented Stringent Protocols to Ensure a Safe Administration of the In-Person Format. .................................................... 10

III.   LEGAL STANDARD FOR PRELIMINARY INJUNCTION ................................ 11

IV.    ARGUMENT ..................................................................................................... 12

     A.    The State Bar's Requirements for the Remote Exam Do Not Discriminate on the Basis of Disability. ..................................................... 12

        1.    The State Bar's Criteria for Remote Testing are Neutral Both Facially and As-Applied. ................................................................... 13

            a)    The Remote Testing Criteria are Not Based on Disability-Related Considerations……………………………………………13

            b)    There is No Clear Correlation Between Disability Status and Testing Format……………………………………………………14

i

2.   The In-Person Format Allows Equal Access to the California Bar Exam.................................................................................. 15

a)   Plaintiffs Fail to Establish That The In-Person Testing Format is Less Safe....................................................................15

b)   Plaintiffs Fail to State a Cognizable Legal Theory Under the ADA Regarding Their Safety Claims.............................16

B.   Regardless, the ADA Does Not Require the State Bar to Incur Undue Burden or Undertake a Fundamental Alteration of the Bar Exam. ......................... 17

1.   Plaintiffs' Sought Relief Would Impose an Undue Burden on the State Bar. ..................................................................................... 17

2.   Plaintiffs' Sought Relief Would Constitute a Fundamental Alteration of the Bar Exam. ....................................................... 19

C.   Plaintiffs Have Not Met the High Standard for Issuance of a Mandatory Preliminary Injunction.................................................................... 19

1.   Plaintiffs Seek a Mandatory Injunction Imposing Vague and Unworkable Requirements. ................................................... 19

2.   Plaintiffs Have Not Shown That the Law and Facts Clearly Favor Their Position. .................................................................. 20

3.   Plaintiffs Will Not Suffer Irreparable Harm...................................... 21

a)   Threats of Irreparable Harm Must be Assessed on the Individual Facts of This Case, and Not Merely Presumed....21

b)   Plaintiffs' Alleged Harm is Speculative.............................22

c)   The Availability of Provisional Licensure Further Undercuts Plaintiffs' Claims of Irreparable Harm..........................24

4.   Plaintiffs Should Post Bond if an Injunction is Issued ...................... 25

V.   CONCLUSION ............................................................................. 26

1

# TABLE OF AUTHORITIES

2

**Cases**

3

4

*Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*
    179 F.3d 725 (9th Cir. 1999) ....................................................................... 14

5

*Building Industry Association of Washington v. Washington State Building Code Council*
    683 F.3d 1144 (9th Cir. 2012) ..................................................................... 23

6

*Elder v. National Conference of Bar Examiners*
    No. C-11-00199-SI, 2011 WL 672662 (N.D. Cal., Feb. 16, 2011) ............... 23

7

8

*Enyart v. Nat'l Conference of Bar Examiners, Inc.*
    630 F.3d 1153 (9th Cir. 2011) ....................................................... 22, 23, 25

9

*Garcia v. Google, Inc.*
    786 F.3d 733 (9th Cir. 2015) ....................................................................... 11

10

*General Elec. Co. v. Joiner*
    522 U.S. 136 (1997)..................................................................................... 23

11

12

*In re Excel Innovations, Inc.*
    502 F.3d 1086 (9th Cir. 2007) ..................................................................... 22

13

*In re Rose*
    22 Cal.4th 430 (2000) ................................................................................... 2

14

*Jones v. National Conference of Bar Examiners*
    801 F.Supp.2d 270 (D. Vt. 2011)................................................................. 25

15

16

*Kelly v. West Virginia Bd. of Law Examiners*
    No. 2:08-00933, 2008 WL 2891036 (S.D. W. Va. July 24, 2008) ............... 23

17

*Lovell v. Chandler*
    303 F.3d 1039 (9th Cir. 2002) ..................................................................... 13

18

19

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*
    571 F.3d 873 (9th Cir. 2009) ....................................................................... 11

20

*MX Grp., Inc. v. City of Covington*
    293 F.3d 326 (6th Cir. 2002) ....................................................................... 14

21

22

*O'Brien v. Virginia Board of Bar Examiners* No. 98-0009-A
    1998 WL 391019 (E.D. Va., Jan. 23, 1998) ............................................... 24

23

*Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust*
    636 F.3d 1150 (9th Cir. 2011) ..................................................................... 12

24

25

*Pazer v. New York State Bd. of Law Examiners*
    849 F.Supp. 284 (S.D.N.Y. 1994)................................................................ 25

26

*Putnam v. Oakland Unified Sch. Dist.*
    1995 U.S. Dist. LEXIS 22122, 1995 WL 873734 (N.D. Cal. June 9, 1995)................. 16

27

28

iii

*Small ex rel. NLRB v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200*
    611 F.3d 483 (9th Cir.2010) ...................................................................................... 21

*Sprint Telephony PCS, L.P. v. County of San Diego*
    490 F.3d 700 (9th Cir. 2007) .................................................................................... 14

*Students of Cal. Sch. for Blind v. Honig,*
    736 F.2d 538 (9th Cir. 1984) .................................................................................... 16

*Sung-Miller v. Regents of the Univ. of Cal.*
    No.: CV 20-00768 AB, 2020 WL 3628710 (C.D. Cal. Mar. 16, 2020) ...................... 21

*Stanley v. University of S. Cal.*
    13 F.3d 1313 (9th Cir. 1994) .................................................................................... 11

*Thompson v. Davis*
    295 F.3d 890 (9th Cir. 2002) .................................................................................... 12

*U.S. v. Salerno*
    481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ............................................ 13

*Valentini v. Shinseki*
    860 F. Supp. 2d 1079 (C.D. Cal. 2012) .................................................................... 13

*Winter v. Natural Res. Def. Council*
    555 U.S. 7 (2008)........................................................................................ 11, 21, 24

**Statutes**

California Business & Professions Code
    § 6001.1 ...................................................................................................................... 3
    § 6060(g) ..................................................................................................................... 3

**Regulations**

28 C.F.R. § 35.164 ............................................................................................................ 17

**Rules**

Federal Rule of Civil Procedure
    rule 6(c)(2) ............................................................................................................... 18
    rule 19 ...................................................................................................................... 18
    rule 65(c) .................................................................................................................. 25

California Rules of Court
    rule 9.3 ....................................................................................................................... 2
    rule 9.13 ..................................................................................................................... 2

**Constitutional Provisions**

California Constitution
    Article VI, Section 9 .................................................................................................. 2

## I.   INTRODUCTION

The State Bar of California's administration of the October Bar Exam is occurring this year in an unprecedented and extraordinary time where the State Bar, in the very short time available to it, has undertaken complex and costly modifications to the examination format to allow over 10,000 registered test-takers the opportunity to become California attorneys during the pandemic. Instead of cancelling the examination, as some other states have, the State Bar is offering the exam in a remote format for most test-takers, and for those test-takers— disabled and non-disabled—who cannot meet the technical requirements of the remote format, the State Bar is endeavoring to ensure equal access to the exam by providing an in-person format where each test-taker will have their own private hotel room and the State Bar will enforce rigorous safety protocols to protect the health of test-takers as well as its own staff and proctors.

In this action Plaintiffs seek a mandatory preliminary injunction ordering Defendants The State Bar of California and State Bar Executive Director Donna Hershkowitz (collectively, "State Bar") to design and implement an entirely new system of administering the Bar Exam for over 100 applicants in the few days remaining until the October 5-6 exam.  Plaintiffs seek this relief based on their inaccurate claim that the State Bar has established a discriminatory "two-tiered" system requiring all disabled applicants to attend the exam in-person.  But in fact, the majority of disabled accommodated test-takers will actually be taking the exam remotely, while a majority of in-person test-takers are actually not disabled and are taking the exam in-person for reasons unrelated to disability (such as not having a computer that meets the required technical specifications or not having a quiet private space at home to take the exam remotely).  Because Plaintiffs' allegation of a facially discriminatory remote exam policy is contradicted by these facts, the Motion for Preliminary Injunction ("Mot.") should be denied.

Moreover, the relief Plaintiffs purport to seek would impose an undue burden on the State Bar and require a fundamental alteration of the exam that abrogates the State Bar's primary mission of consumer protection through attorney licensing.  For example, Plaintiffs ask this Court to order the State Bar to breach its security policies requiring that all paper exams remain

1

within the State Bar's physical custody at all times, and to allow test-takers the ability to take unmonitored breaks in the middle of test questions at the risk that test-takers could easily consult their notes without detection.  Plaintiffs also seek to have the State Bar develop complex systems of remote live monitoring and secured courier delivery of paper exams to over 100 applicants across the State of California.  The ADA does not require such fundamental alterations to the nature of the Bar Exam.

Further, Plaintiffs cannot meet the high showing required to warrant issuance of a mandatory preliminary injunction.  Regarding Plaintiffs' concerns about exposure to Covid-19 and their alleged anxiety that they claim may impact their performance on the exam, the State Bar has undertaken comprehensive efforts to protect the health of test-takers and its own staff and proctors at in-person testing centers, including by providing individual private hotel rooms for each in-person test-taker and implementing rigorous safety protocols developed with the expert advice of an epidemiologist.  Moreover, the California Supreme Court recently lowered the bar exam passing score by 50 points, expressly in recognition of the challenges facing this year's test-takers in light of current events.  The California Supreme Court has also established a provisional lawyer licensure program to allow Plaintiffs to practice law if they do not pass, or if they choose not to take, the October Bar Exam.  All of these factors undermine Plaintiffs' allegations of irreparable harm, and counsel against the issuance of an extraordinary mandate to the State Bar to overhaul its testing program within a matter of days.

For these reasons, Plaintiffs' Motion for Preliminary Injunction should be denied.

## II.  STATEMENT OF FACTS

### A.    The State Bar Administers the Bar Examination at the Direction of the California Supreme Court.

The State Bar is a public agency established by Article VI, Section 9 of the California Constitution, and was "created as an administrative arm of the California Supreme Court for the purpose of assisting in matters of admission and discipline of attorneys."  *In re Rose*, 22 Cal.4th 430, 453 (2000); Cal. Rules of Ct. 9.3, 9.13; *see also* Declaration of Donna S. Hershkowitz

2

("Hershkowitz Decl.") ¶ 3.  The protection of the public is the State Bar's highest priority in carrying out the Supreme Court of California's licensing, regulatory, and disciplinary functions. Cal. Bus. & Prof. Code § 6001.1; *see also* Hershkowitz Decl. ¶ 4.

Those wishing to become licensed to practice law in California must, in addition to satisfying other admissions requirements, pass the California Bar Examination (the "Bar Exam").[1]  Cal. Bus. & Prof. Code § 6060(g); *see also* Hershkowitz Decl. ¶ 6.  Under normal circumstances, the Bar Exam is administered in-person, two times per year, to approximately 13,500 test-takers at conference centers across the State.  Hershkowitz Decl. ¶ 7.  Test-takers in need of reasonable testing accommodations on any portion of the Bar Exam must, pursuant to the Rules of the State Bar, petition for such accommodations in advance of a given administration and provide documentary medical evidence of their need for such accommodations.  *Id.* ¶ 8.  The State Bar grants hundreds of requests for testing accommodations for every administration of the Bar Exam.  *Id.* ¶ 9.

The Bar Exam is generally a two-day examination made up of three parts: a series of essay questions, a performance test, and the Multistate Bar Examination (MBE) multiple-choice test.  *Id.* ¶ 10.  Because the Bar Exam is timed and closed-book, a test-taker's performance depends upon their ability to perform under time constraints, their knowledge of the topics tested, and, with respect to the performance test, their understanding and application of a "closed universe" of materials provided to them.  *Id.* ¶ 11.

**B.    The State Bar's Extraordinary Efforts to Ensure Continuing Access to the Legal Profession During the Pandemic.**

The changing circumstances surrounding the current public health situation caused by Covid-19 have impacted the State Bar's ability to administer the Bar Exam in the traditional mass in-person format.  Hershkowitz Decl. ¶ 12.  The Supreme Court of California has not yet chosen to cancel the Bar Exam, as several other jurisdictions have.  *Id.* ¶ 15.  Instead, the Court

---

[1] As discussed *infra*, a provisional license will soon be available for 2020 graduates practicing law under supervision, even if they have not taken or passed the Bar Exam.

Def. State Bar's Opposition to Motion for Preliminary Injunction                    3:20-cv-06442-LB

1    has directed the State Bar to implement complex modifications to the Bar Exam's format that

2    would allow the Bar Exam to be administered remotely for the most part, thereby significantly

3    reducing the number of in-person test-takers. *Id.* ¶ 13, Ex. A [April 27, 2020 Letter from the

4    Supreme Court of California]; ¶ 14, Ex. B [July 16, 2020 Letter from the Supreme Court of

5    California]; ¶ 15, Ex. C [August 10, 2020 Order from the Supreme Court of California].  The

6    State Bar has since undertaken, in the very short time available to it, extraordinary efforts to

7    allow all approximately 10,043 registered test-takers the opportunity to sit for the October 5-6,

8    2020 Bar Exam and become California-licensed attorneys. *Id.* ¶ 16.  As in earlier times, the

9    State Bar has granted hundreds of disabled test-takers reasonable testing accommodations that

10   afford them equal access to the Bar Exam and the legal profession while preserving the

11   fundamental nature of the examination. *Id.* ¶ 17.

12          Having heard from numerous would-be test-takers that they are not in a position to go

13   forward with the October 2020 Bar Exam due to the public health situation, the Supreme Court

14   of California further directed the State Bar to design and implement California's first provisional

15   licensure program. *Id.* ¶ 14, Ex. B; ¶ 19.  The program will allow 2020 law school graduates to

16   practice law through at least June 1, 2022, under the supervision of qualifying supervising

17   attorney, without first having to take or pass the Bar Exam. *Id.* ¶ 14, Ex. B; ¶ 20.  A

18   provisionally licensed lawyer would be allowed to provide a broad array of legal services for

19   clients, including appearing before a court; drafting legal documents, contracts or transactional

20   documents, and pleadings; engaging in negotiations and settlement discussions; and providing

21   other legal advice. *Id.* ¶ 21, Ex. D [Draft Provisional Licensure Rule].  The State Bar Board of

22   Trustees is expected to shortly submit to the California Supreme Court for adoption a draft Rule

23   of Court establishing the provisional licensure program, and is making every effort to implement

24   the provisional licensure program as soon as possible. *Id.* ¶ 22.

25          **C.     The Requirements of the Remote Exam Format.**

26          As detailed in the Acknowledgment and Acceptance of Testing Conditions for the

27   October 5–6, 2020 Bar Exam, remote test-takers are required to have certain equipment

28
Def. State Bar's Opposition to Motion for Preliminary Injunction                           3:20-cv-06442-LB

(including, among other things, a laptop with functional internal web camera and reliable Internet connection), a quiet testing space, and to agree to the remote testing conditions.  *See* Hershkowitz Decl. ¶ 23, Ex. E [Acknowledgement and Acceptance of Testing Conditions for the October 2020 Bar Exam].  Test-takers who do not have access to the required equipment or a quiet testing space, and those who have been granted testing accommodations that cannot be effectively provided and securely administered in a remote environment, are eligible to sit for the in-person Bar Exam format.  *Id.* ¶ 24.  Most testing accommodations can be effectively provided and securely administered in a remote environment.  *Id.* ¶ 25.  Testing accommodations that cannot be administered remotely are limited to those that are incompatible with the ExamSoft software program and the related remote testing conditions that *all* remote test-takers must agree to—for example, accommodations that require the test-taker to leave the view of the web camera mid-question or that require the use of paper copies of the test questions and/or physical scratch paper.  *Id*.

### D.      Maintaining the Security and Validity of the Remote Exam Format.

Unlike the in-person administration, which is monitored and timed by live proctors, the remote-administered Bar Exam relies upon virtual proctoring, including virtual delivery of the test questions at timed intervals and virtual monitoring of test-taker conduct.  Hershkowitz Decl. ¶ 26.  Virtual proctoring occurs through the ExamSoft software program.[2]  *Id.* ¶ 27.  The remote test-taker sits in view of their laptop's functioning and unobstructed web camera for the duration of each testing session.  *Id.*  Footage of the test-taker is captured by ExamSoft and portions of the footage may be "flagged" for review by human proctors to determine whether the remote test-taker may have engaged in prohibited conduct.  *Id.*  Prohibited conduct includes, but is not limited to, accessing or attempting to access outside materials, sharing the contents of the examination with other individuals, and/or seeking assistance from other individuals.  *Id.* ¶ 23,

---

[2] ExamSoft is a third-party software provider that has contracted with the State Bar in connection with the in-person and remote administrations of the October 2020 Bar Exam, and in connection with past administrations of the in-person Bar Exam.

1    Ex. E; ¶ 28.   If a test-taker is determined to have been engaging in prohibited conduct after

2    several layers of review, they will be issued a conduct violation.  *Id.* ¶ 32.

3           To fulfill its public protection mission, the State Bar cannot compromise the security

4    and validity of the October 2020 Bar Exam in the remote administration.  *Id.* ¶ 30.  Thus, in

5    order to take the Bar Exam remotely using the ExamSoft software program, *all* remote test-

6    takers must agree to the remote format and accept the policies on remote conduct.  *Id.* ¶ 23,

7    Ex. E.  The remote format and the policies on remote conduct reflect the State Bar's need to

8    maintain the security and validity of the remote-administered Bar Exam.  *Id.* ¶ 30.

9           **1.    All Remote Test-Takers Must Agree to Stay In View of Their Web
                    Cameras For the Duration of All Testing Sessions.**
10

11          All remote test-takers must install and certify the ExamSoft software on a laptop

12   computer with a functional internal web camera and microphone.  Hershkowitz Decl. ¶ 23,

13   Ex. E; ¶ 33.  The internal web camera allows the test-taker to be virtually monitored for the

14   duration of each testing session.  *Id.* ¶ 34.  Where the State Bar has no direct control over the

15   remote testing environment (often the test-taker's own home), virtual monitoring allows the State

16   Bar to verify that a test-taker is not engaging in prohibited conduct during the closed-book Bar

17   Exam.  *Id.* ¶ 35.  When a test-taker is outside the view of their web camera, the State Bar has no

18   way of verifying that they are not engaging in prohibited conduct.  *Id.*  Accordingly, and in order

19   to preserve the security and validity of the examination for all test-takers, the State Bar requires

20   that *all* remote test-takers agree to stay in view of their web cameras for the entire duration of

21   each testing session.  *Id.* ¶ 23, Ex. E; ¶ 36.  Test-takers are allowed to leave the view of their web

22   cameras only during scheduled breaks between testing sessions, thus ensuring that they are

23   unaware of the contents of the upcoming test question(s) during all breaks away from their web

24   cameras.  *Id.* ¶ 23, Ex. E; ¶ 37.

25

26

27

28

Def. State Bar's Opposition to Motion for Preliminary Injunction                          3:20-cv-06442-LB

**2.      All Remote Test-Takers Must Agree Not to Have Physical Scratch Paper During the Essay Portion of the Bar Exam.**

It is difficult to verify via web camera that each and every page of a test-taker's physical scratch paper is blank and does not contain any hidden outside materials.  Hershkowitz Decl. ¶ 38.  The essay portion of the Bar Exam is especially vulnerable to cheating and attempted cheating by referencing hidden outside materials because a test-taker's performance depends upon their own knowledge of the subjects to be tested.  *Id.* ¶ 39.  A test-taker could gain an unfair advantage on this portion of the Bar Exam by hiding study aids or other materials between the pages of their physical scratch paper.  *Id.*  All remote test-takers are permitted to use eight pieces of physical scratch paper during only the performance test portion of the Bar Exam, which are to be displayed (front and back) to the web camera, because a test-taker's performance on that the performance test depends primarily upon their understanding and application of a "closed universe" of materials provided by the State Bar, rather than on their own knowledge of the subjects to be tested.  *Id.* ¶ 42.  In other words, a test-taker is unlikely to be able to utilize hidden outside materials to their advantage during the performance test.  *Id.*

In order to preserve the security and integrity of the remote exam, the State Bar requires that all remote test-takers—both disabled and non-disabled—agree not to have physical scratch paper during the essay portion of the Bar Exam.  *Id.* ¶ 23, Ex. E; ¶ 41.  Instead, the State Bar will supply, through the ExamSoft software program, verifiably blank digital scratch paper.  *Id.*

**3.      Password-Protected, Timed Delivery of the Bar Exam Through the ExamSoft Software Program.**

All remote test-takers will download all test questions in advance of the Bar Exam. Hershkowitz Decl. ¶ 43, Ex. F [October 2020 Bar Exam Frequently Asked Questions].  They will then be provided with unique passwords for each testing session at timed intervals to allow them to open and begin reviewing and responding to the test questions in sequence.  *Id.*  Access to the test questions through a password-protected system ensures that a remote test-taker is not accessing or attempting to access the test questions in advance of any timed testing session.  *Id.* ¶ 44.  It also ensures that the State Bar is able to maintain control of the password-protected test

7

questions at all times before, during, and after the examination to prevent unauthorized disclosure of the examination contents.  *Id.* ¶ 45.  Accordingly, in order to prevent unauthorized disclosure of test questions and to preserve the security and integrity of the examination, the State Bar will administer the Bar Exam remotely through the secure ExamSoft software program to all remote test-takers.  *Id.* ¶ 46.

**E.     The Bar Exam Will Also Be Offered Through an In-Person Format to Ensure Full Access.**

To ensure full access, the State Bar is also administering the examination through an in-person format to all test-takers who do not meet the requirements of the remote exam format. Hershkowitz Decl. ¶ 47.  The in-person format allows for monitoring by live proctors, in addition to other security measures.  This enables the State Bar to verify that test-takers are not engaging in prohibited conduct during the examination, to enforce the start and end time for each testing session, and to maintain physical custody over all paper examination materials.  *Id.* ¶ 48.

**F.     The Distribution of Test-Takers Across the Remote and In-Person Formats.**

The majority of October 2020 Bar Exam test-takers—approximately 9,600 out of 10,043—will be taking the exam remotely, including approximately 462 remote test-takers that have been granted testing accommodations related to one or more disabilities.  Hershkowitz Decl. ¶ 49.  There are approximately 443 registered in-person test-takers.  *Id.*  The majority of in-person test-takers (approximately 248, or 56% of all in-person test takers) do not have disability-related accommodations.  *Id.*  These non-disabled test-takers are taking the exam in-person because of inability to comply with the remote exam format for various reasons, including, but not limited to, lack of access to the required technology, lack of Wi-Fi connection, lack of access to an appropriate quiet testing space, or inability to use a computer.  *Id.*  A minority of in-person test-takers (approximately 195, or 44% of all in-person test-takers) are test-takers who have been granted testing accommodations related to one or more disabilities.  *Id.*

The State Bar has been able to accommodate the significant majority of disabled test-takers who require accommodations in the remote format.  *Id.* ¶ 51.  Of the approximately 657

8

1    accommodated test-takers, approximately 462 or (or 70%) are approved to take the examination

2    remotely, while approximately 195 (or 30%) are taking the examination in-person.  *Id.*

3              The California Supreme Court is aware that the State Bar is administering the

4    examination in-person to approximately 443 test-takers and has expressed no objection.  *Id.* ¶ 52.

5              **G.      Plaintiffs' Assigned Testing Formats.**

6              Plaintiff Gordon requested and was granted additional testing time, testing in a private

7    room, printed testing materials and physical scratch paper, permission to lie down during the

8    examination, and permission to bring their own lamp, food, and drink into the secure testing

9    area.  Hershkowitz Decl. ¶ 60, Ex. G [Plaintiff Gordon's Testing Accommodations Notice].

10   Plaintiff Gordon's need for printed testing materials and physical scratch paper is incompatible

11   with the requirements of the remote format and caused Gordon to be assigned to the in-person

12   test format.  *Id.*  (Plaintiff Gordon's need to lie down during the exam is compatible with the

13   requirements of the remote format so long as they remain in view of the web camera while they

14   lie down, and accordingly, this accommodation was not a basis for Gordon's assignment to the

15   in-person test format.  *Id.*)

16             Plaintiff Callejo-Brighton requested and was granted additional testing time, testing in a

17   private room, and seating near a restroom for frequent mid-testing session bathroom breaks.  *Id.*

18   ¶ 61, Ex. H [Plaintiff Callejo-Brighton's Testing Accommodations Notice].  Plaintiff Callejo-

19   Brighton's need for mid-question restroom breaks is incompatible with the requirements of the

20   remote format and caused her to be assigned to the in-person format.  *Id.*

21             Plaintiff Doe requested and was granted additional testing time, testing in a private room,

22   and permission to circle the MBE answers in the MBE question booklet (to be transferred to the

23   MBE answer sheet later by State Bar staff).  *Id.* ¶ 62, Ex. I [Plaintiff Doe's Testing

24   Accommodations Notice].  Plaintiff Doe did not request nor has he been granted a paper copy of

25   the test questions.  *Id.*  Plaintiff Doe is currently assigned to test remotely as the remote-

26   administered examination will allow him to select his answer to each MBE question on the same

27   page where the MBE question is displayed, meeting his disability-related need to avoid moving

28

9

1   back and forth between the question booklet and answer sheet (which was the basis for the

2   earlier grant of Doe's request for permission to circle the MBE answers in the MBE question

3   booklet).[3]  *Id.*

### H.   The State Bar Has Implemented Stringent Protocols to Ensure a Safe Administration of the In-Person Format.

6       The State Bar appreciates the unique challenges of implementing the in-person format

7   during the current public health situation and has accordingly worked to develop stringent safety

8   protocols with the assistance of infectious disease expert and epidemiologist Dr. Jeffrey

9   Klausner.  Hershkowitz Decl. ¶ 54.  As detailed further in Dr. Klausner's declaration, the State

10   Bar's safety protocols (entitled "Healthy Exam Plan" or "HEP") adhere to best practices in

11   community-based sites, as recommended by the Centers for Disease Control and Prevention and

12   the California Department of Public Health.   Declaration of Jeffrey D. Klausner, M.D., M.P.H.

13   ("Klausner Decl.") ¶¶ 36–43, Ex. B.  A key component of the HEP is that each test-taker in the

14   in-person format will be placed in a private hotel room, ensuring minimal contact between test-

15   takers and maximum physical distance.  *Id.*, Ex. B at 8–9.  Other key components include the

16   mandatory use of face coverings by staff and exam participants; the availability and use of

17   alcohol-based disinfectant for hand use; designated site safety leaders; measures to reduce the

18   occupancy of elevators, meeting areas, lunch areas, and restrooms to decrease crowding and

19   reduce possible Covid-19 exposure; and environmental interventions, such as the opening of

20   windows and doors, and the outside placement of registration tables.  *Id.* ¶¶ 36–43, Ex. B.

21       Dr. Klausner also reviewed and approved the State Bar's Code of Conduct Declarations.

22   Klausner Decl.  ¶¶ 44–45, Exs. C–D.  Dr. Klausner confirmed that the State Bar's Covid-19

23   Codes of Conduct are sufficient to minimize Covid-19 exposure at the in-person exam sites

---

[3] Plaintiff Doe's assignment to the remote format with complete accommodation of all of his disability-related needs means that he lacks standing to bring this suit, as explained further in the State Bar's forthcoming Motion to Dismiss.  For purposes of the instant Motion for Preliminary Injunction, Plaintiff Doe's lack of standing also means that he is unlikely to succeed on the merits and is not entitled to preliminary injunctive relief.

1   under the current nationally-accepted safety standards.  *Id.* ¶ 47–48.  Dr. Klausner also reviewed

2   the safety plans of the State Bar's hotel examination sites  *Id.* ¶ 49, Ex. E.  He confirmed that the

3   hotels' safety, cleaning, disinfection, and Covid-19 prevention plans are consistent with current

4   best practices in the industry and that implementation of these plans will lower the risk of Covid-

5   19 transmission within the hotels. *Id.* ¶ 50.  The Crowne Plaza Burlingame examination site

6   (where Plaintiffs Gordon and Callejo-Brighton are assigned) is also certified by the California

7   Hotel and Lodging Association as "Safe and Clean," which means the hotel follows the stringent

8   re-opening guidelines recommended by this organization.  *Id.* ¶ 51.  Based on Dr. Klausner's

9   evaluation of the reasonable measures described in the HEP, the Codes of Conduct, and the hotel

10  prevention plans, he concluded that, in his expert opinion, the Bar Exam may be conducted

11  safely.  *Id.* ¶ 52.  The risk of infection associated with attending the examination and staying in a

12  single, private hotel room is less than visiting a grocery store, and is not greater than visiting a

13  bank.  *Id.*

14  **III.  LEGAL STANDARD FOR PRELIMINARY INJUNCTION**

15         To obtain a preliminary injunction, Plaintiffs must establish that (1) they are likely to

16  succeed on the merits of their claims; (2) they are likely to suffer irreparable harm in the absence

17  of preliminary relief; (3) the balance of equities tips in their favor; and (4) the injunction is in the

18  public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008).

19         A preliminary injunction can be either prohibitory or mandatory.  "A prohibitory

20  injunction prohibits a party from taking action and preserves the status quo pending a

21  determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH

22  & Co.*, 571 F.3d 873, 878–79 (9th Cir. 2009) (internal quotation omitted).  On the other hand, an

23  injunction that "orders a responsible party to take action" is properly treated as a mandatory

24  injunction. *Id.* at 879. A mandatory preliminary injunction "goes well beyond simply

25  maintaining the status quo" and "is particularly disfavored."  *Garcia v. Google, Inc.*, 786 F.3d

26  733, 740 (9th Cir. 2015) (citing *Stanley v. University of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir.

27  1994)). The burden on a party seeking a mandatory injunction is thus "doubly demanding." *Id.*

28

1    Such relief is "not granted unless extreme or very serious damage will result and [is] not issued

2    in doubtful cases or where the injury complained of is capable of compensation in damages."

3    *Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879 (citation omitted); *see also Park Vill. Apartment*

4    *Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1160 (9th Cir. 2011) (mandatory

5    injunctions should not issue in "doubtful cases"). The movant "must establish that the law and

6    facts *clearly favor* her position, not simply that she is likely to succeed." *Garcia*, 786 F.3d at 740

7    (emphasis in original).

8    **IV.   ARGUMENT**

9        **A.     The State Bar's Requirements for the Remote Exam Do Not Discriminate on
             the Basis of Disability.**

10

11       Plaintiffs fail to show that the State Bar's requirements for the remote Bar Exam

12   discriminate on the basis of disability.  "To state a claim of disability discrimination under Title

13   II, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability;

14   (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public

15   entity's services, programs, or activities; (3) the plaintiff was either excluded from participation

16   in or denied the benefits of the public entity's services, programs, or activities, or was otherwise

17   discriminated against by the public entity; and (4) such exclusion, denial of benefits, or

18   discrimination was by reason of the plaintiff's disability."  *Thompson v. Davis*, 295 F.3d 890, 895

19   (9th Cir. 2002).

20       Here, Plaintiffs cannot establish the third prong (denial of benefits), as they are able to

21   fully access the Bar Exam through the in-person format.  They therefore fail to state an ADA

22   claim.  But even if Plaintiffs could establish that their assignment to the in-person format

23   somehow constitutes a denial of benefits under the ADA, they still fail to meet the fourth prong

24   (denial by reason of disability) because the technical limitations of the remote exam format are

25   neutral and apply to disabled and non-disabled test-takers alike.  Because Plaintiffs fail to state a

26   cognizable claim under the ADA, they have not demonstrated that the law and facts *clearly favor*

27

28

1    position, and thus cannot meet the high standard required for issuance of a mandatory

2    preliminary injunction.[4]

3         1.    **The State Bar's Criteria for Remote Testing are Neutral Both Facially and As-Applied.**

4

5         Plaintiff's "facial discrimination" claim fails because the State Bar's criteria for the

6    remote format are neutral both facially and as-applied.

7              a)    The Remote Testing Criteria are Not Based on Disability-Related Considerations.

8

9         Plaintiffs' characterization of the Bar Exam as a "two-tiered" system, Mot. at 18:12, that

10   "require[s] in-person testing only for disabled test takers with certain accommodations," *id.* at

11   19:6, is simply incorrect.  In order to test remotely, an examinee must be able to abide by the

12   conditions of the remote examination, regardless of disability or testing accommodations.

13   Hershkowitz Decl. ¶ 23, Ex. E.  This requirement applies to those test-takers who do not have a

14   laptop computer that meets certain technical specifications, test-takers who do not have a private

15   space conducive to testing at home, and test-takers taking the examination in paper format.  *Id.*

16   These conditions are detailed in the Acknowledgement and Acceptance of Testing Conditions

17   form provided to all applicants registered for the Bar Exam. *Id.*

18        Plaintiffs' argument that the policy at issue is facially discriminatory is incorrect.  A

19   facially discriminatory government policy is one that effects "a categorical exclusion of disabled

20   persons from a public program."  *Lovell v. Chandler*, 303 F.3d 1039, 1057 (9th Cir. 2002).  In

21   order to prevail on a facial challenge, a plaintiff generally must demonstrate that there is "no set

22   of circumstances" under which the act or policy would be valid. *U.S. v. Salerno,* 481 U.S. 739,

23   745 (1987).  But where, as here, a policy is neutral on its face and applies to both disabled and

24   non-disabled persons, a claim of facial discrimination cannot be sustained.  *See, e.g., Valentini v.*

25   *Shinseki*, 860 F. Supp. 2d 1079, 1114 (C.D. Cal. 2012) (rejecting veterans' purported facial

26

27   ---
     [4] Plaintiffs also allege generally that risk to their family members warrants relief under the ADA, *see, e.g.*, Mot. at 11:4–12:6, but fail to cite any law in support of this proposition.

28

1    challenge to VA policies and practices for failure to identify any "policy, plan, regulation, or rule

2    that is allegedly discriminatory on its face").

3           Here, the State Bar's limitation of the remote format to those who have a laptop computer

4    with a web camera and are able to sit in view of the remote proctor for the duration of each exam

5    question is not facially discriminatory.  The State Bar's remote exam policy is therefore unlike

6    the only two cases cited by Plaintiffs in support of their facial discrimination argument, which

7    both involved municipal zoning ordinances barring methadone clinics.  *See* Mot. at 18:22–19:4

8    (citing *Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*, 179 F.3d 725 (9th Cir.

9    1999) and *MX Grp., Inc. v. City of Covington*, 293 F.3d 326 (6th Cir. 2002)).  Those cases

10   facially targeted a class of disabled persons, namely persons recovering from drug addiction.

11   The State Bar's criteria make no such distinction.  Plaintiffs have therefore failed to state a

12   cognizable facial discrimination claim, let alone to meet their "high burden" of carrying a facial

13   challenge.  *See Sprint Telephony PCS, L.P. v. County of San Diego,* 490 F.3d 700, 711 (9th Cir.

14   2007).

15                  b)      There is No Clear Correlation Between Disability Status and
                           Testing Format.
16

17          Plaintiffs' allegation of discrimination "by reason of" disability is most convincingly

18   refuted by the actual numerical distribution of applicants across the two testing formats, which

19   shows no correlation between format assignment and disability status.  In fact, the majority of

20   test-takers taking the exam in-person, approximately 248 out of 443 (56%), are non-disabled and

21   their reasons for taking the exam in-person have nothing to do with disability accommodations.

22   Hershkowitz Decl. ¶ 50.  And out of the approximately 657 test-takers granted disability-related

23   accommodations, a vast majority (approximately 462 or 70%) have been approved for the remote

24   format.  *Id.* ¶ 51.

25

26

27

28

---

14

1

2        **2.      The In-Person Format Allows Equal Access to the California Bar**
            **Exam.**

3

4        Plaintiffs acknowledge that the State Bar has granted Plaintiffs the disability-related

5   accommodations they seek for the October 2020 Bar Exam. *See* Mot. at 14:8–14, 16:1–2, 17:3–

6   4; *see also* Hershkowitz Decl. ¶¶ 60–62, Exs. G–I.  The sufficiency of those accommodations to

7   address their disability-related needs is not disputed.  Instead, Plaintiffs appear to allege that,

8   absent an injunction, they will be denied the benefits of the Bar Exam because they have been

9   assigned to the in-person, rather than the remote, testing format.  But the in-person testing format

10  provides equal access by ensuring that test-takers who cannot test within the remote format

    nonetheless are able to take the Bar Exam.

11              a)      Plaintiffs Fail to Establish That The In-Person Testing Format is
                        Less Safe.

12       Plaintiffs instead argue that the in-person testing format is "less safe" and therefore

13  somehow amounts to a denial of access to the Bar Exam. But Plaintiffs fail to establish that the

14  in-person testing format is unsafe.  As explained in Section II.H, *supra*, the State Bar has

15  developed rigorous safety protocols with the expert advice of an infectious disease expert, Dr.

16  Jeffrey Klausner, who (unlike Plaintiffs' medical witness, Dr. Julie Graves) is an epidemiologist

17  who has led investigation and control measures of disease outbreaks and has personally treated

18  dozens of Covid-19 infected patients.  Klausner Decl. ¶¶ 1, 3, 5, 12, 14, 15, 17, 18.  The State

19  Bar's safety protocols adhere to best practices in community-based sites, as recommended by the

20  Centers for Disease Control and Prevention and the California Department of Public Health.

21  Klausner Decl. ¶ 36.  Importantly, each applicant will be provided a private room, ensuring

22  minimal contact with other attendees.  Klausner Decl. ¶ 54; Ex. B at 8–9.  The fact that in-person

23  test-takers will each have their own private room renders the analysis of Plaintiffs' medical

24  witness, Dr. Julie Graves, irrelevant and inapplicable here because Dr. Graves's opinion was

25  expressly premised on the incorrect assumption that the in-person testing format would involve

26  large numbers of test-takers "sitting together in the same room" where they "cannot social

27  distance."  Plaintiffs' Declaration of Dr. Julie DeAun Graves [Dkt. No. 6-4] ¶ 14.  Dr. Graves's

28

conclusions drawn from this incorrect assumption cannot be used to assess the actual conditions under which the State Bar will administer the in-person format.  Klausner Decl. ¶ 63.[5]  In fact, the risk of attending and staying inside a single, private hotel room during the in-person administration of the Bar Exam is less than visiting a grocery store, and is not greater than visiting a bank.  Klausner Decl. ¶ 52.

b)      Plaintiffs Fail to State a Cognizable Legal Theory Under the ADA Regarding Their Safety Claims.

Nor have Plaintiffs adequately explained how their claims regarding safety actually constitute a valid ADA claim.  Plaintiffs cite only two inapposite cases in purported support of their legal theory. In *Students of Cal. Sch. for Blind v. Honig*, 736 F.2d 538, 546–47 (9th Cir. 1984), *vacated on other grounds*, 471 U.S. 148 (1985), the Ninth Circuit held that the definition of "comparable facilities" in regulations implementing the Rehabilitation Act included comparability of seismic risk.  In the other case cited by Plaintiffs regarding safety, *Putnam v. Oakland Unified Sch. Dist.*, No. C–93–3772CW, 1995 WL 873734 (N.D. Cal. June 9, 1995), the district court held on summary judgment that the existence of architectural barriers, including excessively steep wheelchair ramps and heavy doors, combined with the failure to prepare an accessibility plan, made Oakland schools inaccessible for purposes of Rehabilitation Act regulations (but did not rule on the ADA claims).  Neither case supports Plaintiffs' conclusion that the State Bar's in-person testing format—which applies to both disabled and non-disabled test-takers alike, and in fact, includes more non-disabled than disabled test-takers, *see* Hershkowitz Decl. ¶ 49—violates the ADA.

---

[5] Dr. Graves also ignores in her risk assessment the protective effects of personal behavior change such as covering coughs or sneezes, cessation of hugging or handshaking, avoidance of those ill, or the staying at home of those ill. Klausner Decl. ¶ 66.  In addition, she ignores the effect that mask or facial shield use has on reducing the spread of infection. Instead, Dr. Graves only focuses on social distancing and quarantine (or more correctly, home confinement, as "quarantine" refers to the social isolation of those exposed). *Id*.  Dr. Klausner also identified numerous other inaccuracies in Dr. Graves' statements regarding Covid-19. *Id*. ¶¶ 64–75.

Def. State Bar's Opposition to Motion for Preliminary Injunction      3:20-cv-06442-LB

**B.   Regardless, the ADA Does Not Require the State Bar to Incur Undue Burden or Undertake a Fundamental Alteration of the Bar Exam.**

Assuming *arguendo* that Plaintiffs have sufficiently alleged disability discrimination (despite the neutrality of the State Bar's remote exam policy), they nonetheless fail to state an ADA claim because the ADA does not require the State Bar "to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens." 28 CFR § 35.164; *see* Hershkowitz Decl. ¶ 63, Ex. J [Feasibility Analysis].  The Bar Exam will take place within a matter of days.  Yet Plaintiffs seek to have this Court order the State Bar to develop wholly new and untested alternative systems to implement live remote monitoring and arrange for secure courier delivery of paper exams to test-takers' homes, among other things.  Mot. at 9:13–11:3.   Plaintiffs' proposed untested procedures could ironically result in the disruption of the exam, whereas in-person administration more reliably offers equal access.  Further, an order of this Court directing the State Bar to implement vague, burdensome, and infeasible protocols could theoretically require a further delay or cancellation of the exam.

**1.   Plaintiffs' Sought Relief Would Impose an Undue Burden on the State Bar.**

The enormity of the task that Plaintiffs propose to have the State Bar undertake within the few days remaining until the Bar Exam cannot be understated.  Plaintiffs seek to have the State Bar abruptly overhaul exam plans for **over 100 applicants**.[6]  In their Amended [Proposed] Order [Dkt. No. 37], Plaintiffs seek to order the State Bar not only to provide relief to the three named Plaintiffs but also as to all "other test takers with disabilities who are approved for paper copies of the exam and/or unscheduled bathroom breaks."[7]  The State Bar is already undertaking

---

[6] Hershkowitz Decl. ¶ 95 (explaining that there are approximately 103 applicants who would be affected by Plaintiff's Amended [Proposed] Order).

[7] Plaintiffs' late-filed "Amended" [Proposed] Order [Dkt. No. 37] purports to radically expand the scope of this case and was filed the day before Defendants' opposition was due.  Not only is it patently unfair for Plaintiffs to continue morphing their case with late filings, *see also* Dkt. No. 23 (late-filed declaration in violation of Rule 6(c)(2)), this amended proposed order raises serious questions of justiciability given the large number of individuals affected and the lack of

17

1    extraordinary efforts to administer the Bar Exam in two different formats under unprecedented

2    circumstances.  Hershkowitz Decl. ¶ 16.  The State Bar has been informed that the development

3    of a reliable remote live proctoring system could take 60 to 90 days, *id.* ¶ 85, far more than the 3

4    business days remaining between the date of hearing on this Motion and the Bar Exam.[8]

5           Plaintiffs' myriad suggestions for implementation of their proposals only highlight the

6    infeasibility of this task at this late stage.  *See, e.g.,* Plaintiffs' Declaration of Gabriel Gonzalez

7    [Dkt. No. 23] (proposing a combination of specialized Zoom portals, secure file transfers,

8    Dropbox, Box, taking pictures of paper answer sheets with iPhones, home printers, couriers,

9    remote live proctoring vendors, and multiple laptop computers per applicant).  In good faith, the

10   State Bar has diligently evaluated the feasibility of Plaintiffs' requests and has determined that

11   they cannot be implemented reliably in the short time remaining before the Bar Exam.

12   Hershkowitz Decl. ¶ 63, Ex. J; ¶¶ 87–93.  Many of the suggestions offered also suffer from their

13   own risks, such as dependence on constant Internet connectivity.  *Id.* ¶ 84.  For the upcoming

14   administration of the Bar Exam in the remote format, the State Bar has undertaken months of

15   rigorous technical testing, included a technical pilot and mock exam, *id.* ¶ 88, but there is simply

16   no time to apply that same level of technical testing to developing a new system for Plaintiffs

17   and 100 other test-takers in the course of only a few days.  *Id.* ¶ 63, Ex. J; ¶¶ 87–93.

18

19

20

21
_____

22   information available to the Court and Defendants regarding these individuals' entitlement to
     relief.  *See* Fed. R. Civ. P. 19 (requiring joinder of all persons claiming an interest in the subject
23   of the action).  And while a facially-invalid policy could properly be enjoined without joinder of
     all affected parties, here Plaintiffs have failed to properly articulate a cognizable facial challenge
24   to the State Bar's neutral policies regarding the remote exam format.  *See* Section IV.A.1.a,
25   *supra.*

     [8] Other vendors have represented to the State Bar and to Plaintiffs' counsel shorter timeframes
26   for deployment, but the reliability of their claims and quality of their products is not known.
     Hershkowitz Decl. ¶ 86.  Rushing through such an enormous last-minute change would inject
27   chaos into an already challenging exam administration.

28

2.    **Plaintiffs' Sought Relief Would Constitute a Fundamental Alteration of the Bar Exam.**

Plaintiffs' requests also pose such substantial security risks that implementation would effect a fundamental alteration of the Bar Exam that the ADA does not require.  For example, Plaintiffs' suggestion that test-takers be allowed to exit the view of their web cameras and go behind closed doors during active test sessions (*i.e.*, while a question remains pending) could allow test-takers to consult notes or communicate with others undetected.  Hershkowitz Decl. ¶¶ 64–72.  Plaintiffs' suggestion that certain test-takers be allowed to have physical scratch paper during the essay portions of the examination could enable test-takers to conceal study aids between the pages with little chance of being caught.  *Id.* ¶¶ 73–76.  And Plaintiffs' suggestion that certain test-takers be allowed to receive paper copies of the test questions outside the secure ExamSoft software program would risk unauthorized disclosure of the test questions (jeopardizing the validity of the Bar Exam for all test-takers) and prevent the State Bar from administering the time-sensitive test questions to those test-takers at timed intervals.  *Id.* ¶¶ 77–76.  The Bar Exam is a timed test.  *Id.*  While Plaintiffs have proposed a remote live proctor to enforce time, the development of a reliable remote live proctoring system capable of accurately and consistently enforcing the start and end time for each testing session is simply not possible at this late stage.  *Id.* ¶ 63, Ex. J; ¶¶ 87–93.

C.    **Plaintiffs Have Not Met the High Standard for Issuance of a Mandatory Preliminary Injunction.**

1.    **Plaintiffs Seek a Mandatory Injunction Imposing Vague and Unworkable Requirements.**

Plaintiffs purportedly seek an order "enjoining Defendants from requiring them to take the exam in-person instead of remotely." Mot. at 1:9–10; *see also* Plaintiffs' Amended [Proposed] Order [Dkt. No. 37].  While Plaintiffs attempt to characterize their request as a straightforward prohibitory injunction, in fact the relief sought would change the status quo by requiring the State Bar to develop and implement a new system to satisfy Plaintiffs' requests to test remotely while deviating from the current remote exam format requirements.  The injunction Plaintiffs seek is therefore properly characterized as mandatory, not prohibitory, in nature.

19

Specifically, in order to both allow Plaintiffs to test remotely *and* permit them to test with all of their granted accommodations, Plaintiffs explain that the State Bar would have to affirmatively "provide Plaintiffs' accommodations remotely." Mot. at 3:10–11. Plaintiffs' Proposed Order fails to specify how the State Bar is to fulfill their request, but their Motion offers myriad suggestions, such as:

- Implementing a new system for monitoring and reviewing video of bathroom breaks, Mot. at 9:15–10:2;

- "[S]et[ting] up an approved alternative visual monitoring program" to monitor test-takers who need to move around or lie down during the Examination, Mot. at 10:4; and

- Implementing a new system for secure and prompt shipping and monitoring of hard-copy paper examinations, whereby "Plaintiffs can receive a sealed exam and open it in view of the webcam at the beginning of each test session."[9] Mot. at 10:17–18.

In asking the Court to order the State Bar to develop these new systems and protocols, Plaintiffs' proposed preliminary injunction would clearly "order[] a responsible party to take action." *Garcia, supra*, 786 F.3d at 740 (quotation omitted).  It is therefore a mandatory injunction, and to obtain this relief, Plaintiffs "must establish that the law and facts *clearly favor* [their] position, not simply that [they are] likely to succeed." *Id.* (emphasis in original). Plaintiffs have failed to make this showing.

## 2.    Plaintiffs Have Not Shown That the Law and Facts Clearly Favor Their Position.

Plaintiffs have not met their burden of demonstrating that the law and facts "clearly favor" their position.  In fact, Plaintiffs have failed to state a cognizable ADA claim.  *See* section IV.A, *supra*.  But even if the viability of Plaintiffs' ADA claims were reasonably in dispute, this still would not be enough to justify a mandatory preliminary injunction.  *See, e.g.*, *Sung-Miller v. Regents of the Univ. of Cal.*, No.: CV 20-00768 AB, 2020 WL 3628710, at *3 (C.D. Cal. Mar.

---

[9] While Defendant NCBE now proposes to relax its policies regarding security of paper exam materials (*see* NCBE's Opposition to the Motion for Preliminary Injunction, Dkt. 42, at 3:25-4:2), this does not address the State Bar's inability to deploy such a complicated system in the short time remaining before the Bar Exam.

16, 2020) (denying preliminary injunction in ADA Title II case due to "significant factual disputes").

### 3.    Plaintiffs Will Not Suffer Irreparable Harm.

Plaintiffs are also unable to meet their burden in demonstrating that they are likely to suffer irreparable harm in the absence of preliminary relief.  Plaintiffs state that the irreparable harm at issue in this case is increased risk of infection of Covid-19, failing the Bar Exam, and Plaintiffs' loss of opportunity to pursue their chosen profession.  Mot. at 22:24–26.  However, this harm is entirely speculative, is factually disputed by Dr. Klausner's testimony (which is the only epidemiological expert evidence presented to the Court), and is further undercut by the availability of the State Bar's pending provisional licensure program and the recently lowered passing score of the Bar Exam.

### a)    Threats of Irreparable Harm Must be Assessed on the Individual Facts of This Case, and Not Merely Presumed.

Plaintiffs misstate the law in arguing—incorrectly—that irreparable harm may be presumed upon finding a likely statutory violation.  Mot. at 23:4–13.  In fact, the Supreme Court and Ninth Circuit have expressly rejected such a presumption and instead require an individualized analysis of the particular facts of each case.  Plaintiffs misleadingly cite only cases that predate the Supreme Court's ruling in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), which rejected presumptions of harm for preliminary injunctions based on alleged statutory violations, and reaffirmed that irreparable harm must be determined to be "likely" in the individual case.  In *Park Village Apartment Tenants Ass'n v. Mortimer Howard Trust*, the Ninth Circuit affirmed that irreparable harm must be evaluated on a "case-specific approach" and held that "we do not presume irreparable harm simply because a defendant violates a statute that authorizes injunctive relief." 636 F.3d 1150, 1162 (9th Cir. 2011) (citing *Small ex rel. NLRB v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200*, 611 F.3d 483, 494 (9th Cir. 2010) (expressly rejecting, in light of *Winter*, the Ninth Circuit's prior holding that "once a likelihood of success is established, district courts are required to 'presume irreparable injury'" in statutory enforcement actions)).  Under current Supreme Court and Ninth

21

1    Circuit law, this Court must decide "[o]n the facts of this case" whether an injunction is

2    warranted. *Winter,* 555 U.S. at 21.

3         Such a presumption of harm is not only clearly improper under controlling law and

4    Plaintiffs do not cite any ADA case in which such a presumption has been applied.  In fact, in the

5    ADA cases cited by Plaintiffs (such as *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630

6    F.3d 1153, 1165 (9th Cir. 2011)), courts have engaged in a particularized factual analysis of the

7    purported harm, rather than simply presuming harm based on a finding of a likely statutory

8    violation.  A preliminary injunction therefore cannot issue merely based on a presumption of

9    harm.  Instead, the Court should analyze the facts of this specific case.  And in this case, the facts

10   do not support a finding of likely irreparable harm.

11                     **b)      Plaintiffs' Alleged Harm is Speculative.**

12        Plaintiffs have failed to demonstrate that they are likely to suffer irreparable harm if a

13   preliminary injunction is not granted.  Plaintiffs' alleged harm that they allegedly are subject to

14   an increased chance of failing the examination, and the consequential "loss of opportunity to

15   pursue their chosen profession," Mot. at 22:26, is purely speculative.  "Speculative injury cannot

16   be the basis for a finding of irreparable harm." *In re Excel Innovations, Inc.*, 502 F.3d 1086,

17   1098 (9th Cir. 2007).  Plaintiffs' only argument related to this alleged harm is that Plaintiffs will

18   be disadvantaged on the Bar Exam in comparison to remote testers because they will have to

19   "expend mental resources on issues other than the content of the exam such as face-coverings,

20   social-distancing, sanitizing, and fear of Covid-19." Mot. at 21:11–13.  And Plaintiffs support

21   this argument only by reference to paragraphs 26 through 28 of the Declaration of Peter Blanck,

22   Ph.D., J.D.  Dr. Blanck, in turn, states only that Plaintiffs will face a "different" testing

23   administration than remote test-takers, and that while remote test-takers will have some control

24   over testing environments, Plaintiffs will be forced to travel and interact with outside individuals,

25   causing "elevated anxiety, stress, and fear."  Plaintiff's Declaration of Peter Blanck, Ph.D., J.D.

26   [Dkt. No. 6-6] ¶¶ 26–28.  These statements are not made pursuant to any personal examination of

27   Plaintiffs by Dr. Blanck; instead, Dr. Blanck cites only to Plaintiffs' own statements about their

28

Def. State Bar's Opposition to Motion for Preliminary Injunction                              3:20-cv-06442-LB

1    fear and anxiety regarding the risk of contracting Covid-19.  *Id.*  Because Dr. Blanck's basis for

2    his conclusion is simply a circular reference to Plaintiff's own assertions and his opinion is not

3    supported by any extrinsic scientific evidence, his conclusion is mere speculation and should not

4    be accorded any weight.  *See, e.g., Building Industry Association of Washington v. Washington*

5    *State Building Code Council*, 683 F.3d 1144, 1154 (9th Cir. 2012) (expert testimony must be

6    "based on sufficient facts or data"); *see also General Elec. Co. v. Joiner,* 522 U.S. 136, 146

7    (1997) (court need not consider "opinion evidence that is connected to existing data only by

8    the *ipse dixit* of the expert").

9           Thus, in this case—in contrast to the cases on which Plaintiffs rely—Plaintiffs have not

10   "demonstrated…that [their] ability to pass the California bar exam would be significantly

11   compromised." *Cf. Elder v. National Conference of Bar Examiners*, No. C-11-00199-SI, 2011

12   WL 672662, at *10 (N.D. Cal., Feb. 16, 2011) (plaintiff demonstrated that actual performance on

13   the examination itself would be significantly impacted by using a live reader instead of available

14   software); *Enyart v. National Conference of Bar Examiners, Inc*., 630 F.3d 1153, 1155 (9th Cir.

15   2011) (plaintiff demonstrated that she would not physically be able to complete examination

16   with prior accommodations as opposed to requested technology).

17          Plaintiffs' claims of harm based on feared anxiety and poor performance on the Bar

18   Exam are all the more speculative in light of the California Supreme Court's recent decision to

19   make the Bar Exam *easier* to pass by reducing the passing score by 50 points, from 1440 to

20   1390.  *See* Hershkowitz Decl. Ex. C [August 10, 2020 California Supreme Court Administrative

21   Order Concerning Modifications to the California Bar Exam] (reducing pass score in recognition

22   of the "changing circumstances surrounding the ongoing COVID-19 pandemic").  Furthermore,

23   any concerns regarding irreparable harm from failing the Bar Exam are tempered by the

24   availability of future administrations of the Bar Exam.  *See Kelly v. West Virginia Bd. of Law*

25   *Examiners*, No. 2:08-00933, 2008 WL 2891036, at *2 (S.D. W. Va. July 24, 2008) (finding that

26   the provision of less time than requested on bar examination would not create irreparable harm,

27   despite the fact that it would be "undesirable" to have to retake a future administration of the

28

1  examination should the plaintiff fail); *see also O'Brien v. Virginia Board of Bar Examiners*, No.

2  98-0009-A, 1998 WL 391019, at *2 (E.D. Va., Jan. 23, 1998) (finding no irreparable harm where

3  "[a]t worst, Plaintiff will have to wait six additional months to sit for the exam").

4    Plaintiffs' claimed irreparable harm from the risk of infection is also speculative by

5  definition.  As Dr. Klausner has opined, the risk of infection in the relevant localities is

6  extraordinarily low, 0.23% (or 2.3 per 1,000), and the risk of serious illness, hospitalization, or

7  death if infected is significantly lower. Klausner Decl. ¶¶ 58–59.[10]  Dr. Klausner also opines that

8  the risk of infection associated with participating in the Bar Exam through the in-person format

9  is less than that of visiting a grocery store.  Klausner Decl. ¶ 52.  Given this low statistical

10  probability, it cannot be concluded that irreparable harm is "likely."  *See Winter, supra*, 555 U.S.

11  at 23 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is

12  inconsistent with our characterization of injunctive relief as an extraordinary remedy that may

13  only be awarded upon a clear showing that the plaintiff is entitled to such relief.").

14    **c)    The Availability of Provisional Licensure Further Undercuts
       Plaintiffs' Claims of Irreparable Harm.**

15

16    Plaintiffs' allegations that they will experience irreparable harm in the form of failing the

17  Bar Exam and being unable to pursue their chosen profession is further undercut by the

18  availability of the State Bar's pending provisional licensure program for 2020 graduates.  The

19  California Supreme Court's order for the State Bar to develop this program of supervised

20  practice was made in specific recognition of the unprecedented issues created by the current

21  public health situation.  Hershkowitz Decl. ¶ 19, Ex. B.  Plaintiffs, like all 2020 graduates, may

22  use this provisional licensure program to pursue legal practice if they fail the October 2020

23  Exam, or even if they choose not to take it.  *Id.* ¶ 21, Ex. D.  At a minimum, the availability of

24

25

26  [10] Dr. Klausner also opines that there is insufficient evidence regarding Plaintiffs' risks of illness,
    Klausner Decl. ¶¶ 73-75, and that Dr. Graves's statements are factually inaccurate. Klausner

27  Decl. ¶¶ 62-75.

28

Def. State Bar's Opposition to Motion for Preliminary Injunction                    3:20-cv-06442-LB

1    the provisional licensure program means that the Court cannot view potential exam failure as an

2    irreparable harm in this case.

3             While in *Enyart*, 630 F.3d at 1156, the Ninth Circuit found that the State Bar's "certified

4    law student" program was not a sufficient substitute for licensure to practice law, the proposed

5    provisional licensure program offered to 2020 graduates in recognition of this year's unique

6    circumstances will be qualitatively different and would permit Plaintiffs far greater privileges to

7    practice than the certified law student program—provisionally licensed lawyers will, under

8    supervision, be able to offer the full scope of legal services that a fully licensed lawyer would be

9    able to provide.  Hershkowitz Decl. ¶ 21, Ex. D.  Plaintiffs have not presented any facts that

10   indicate that they would not be able to fully participate in the provisional licensure program or

11   that their post-examination employment plans are incompatible with provisional licensure. *See*

12   *Pazer v. New York State Bd. of Law Examiners*, 849 F.Supp. 284, 288 (S.D.N.Y. 1994) (finding a

13   lack of irreparable harm where plaintiff seeking bar examination accommodations "was already

14   gainfully employed" at a law firm).

15                 **4.     Plaintiffs Should Post Bond if an Injunction is Issued**

16            Under Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary

17   injunction or a temporary restraining order only if the movant gives security in an amount that

18   the court considers proper to pay the costs and damages sustained by any party found to have

19   been wrongfully enjoined or restrained."  Nevertheless, Plaintiffs ask this Court to issue an

20   injunction without requiring Plaintiffs to post bond, supported only by an unexplained reference

21   to Plaintiffs' "individual situations" and an allegation that Defendants' expenses would be

22   minimal.  Mot. at 25:1–6.  But even the cases cited by Plaintiffs in which courts granted

23   preliminary injunctions regarding bar examination accommodations required plaintiffs to post

24   modest bonds as Rules 65(c) provides.  *See, e.g.*, *Enyart*, *supra*, 630 F.3d at 1166 (two $5,000

25   bonds); *Elder*, *supra*, 2011 WL 672662, at *11 ($5,000 bond); *Jones v. National Conference of

26   Bar Examiners*  801 F.Supp.2d 270, 291 (D. Vt. 2011) ($5,000 bond).  In the event the Court

27   grants Plaintiffs' Motion, Plaintiffs should each be required to post the same bond.

28

                                              25

1

## V.  CONCLUSION

2          For all the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction should be

3 denied.

4

5

6 Dated: September 22, 2020                    OFFICE OF GENERAL COUNSEL

7                                              THE STATE BAR OF CALIFORNIA

8                                              VANESSA L. HOLTON

9                                              ROBERT G. RETANA

                                               JAMES J. CHANG

10                                             CAROLINE W. HOLMES

11

12                                             By: /s/ JAMES J. CHANG

                                                   JAMES J. CHANG

13                                                 Assistant General Counsel

14                                                 Attorneys for Defendants

15                                                 The State Bar of California and

                                                   Donna Hershkowitz

16

17

18

19

20

21

22

23

24

25

26

27

28

Def. State Bar's Opposition to Motion for Preliminary Injunction                    3:20-cv-06442-LB