VANESSA L. HOLTON (111613)
General Counsel
ROBERT G. RETANA (148677)
Deputy General Counsel
JAMES J. CHANG (287008)
Assistant General Counsel
CAROLINE W. HOLMES (299116)
Assistant General Counsel
OFFICE OF GENERAL COUNSEL
THE STATE BAR OF CALIFORNIA
180 Howard Street
San Francisco, CA 94105-1639
Tel: (415) 538-2320
Fax: (415) 538-2321
Email:  james.chang@calbar.ca.gov

Attorneys for Defendants State Bar of California and Donna Hershkowitz

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARA GORDON, ISABEL CALLEJO-BRIGHTON and JOHN DOE,<br><br>Plaintiffs,<br><br>v.<br><br>STATE BAR OF CALIFORNIA; DONNA HERSHKOWITZ; and NATIONAL CONFERENCE OF BAR EXAMINERS,<br><br>Defendants. | Case No.   3:20-cv-06442-LB<br><br>**DECLARATION OF AMY NUÑEZ IN SUPPORT OF DEFENDANTS STATE BAR OF CALIFORNIA AND DONNA HERSHKOWITZ'S OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

I, Amy Nuñez, declare as follows:

1. I have personal knowledge of the matters stated herein, except as otherwise stated, and if called as a witness, I could and would competently testify thereto.

2. I am the Director of Admissions for the State Bar of California ("State Bar"), Defendant in this matter.

3. In that capacity, I oversee the State Bar's Office of Admissions, which is responsible for, among other things, administration of the upcoming October 5-6, 2020 California Bar Examination ("Bar Exam").

4. There are many other test-takers who are similarly-situated to Plaintiffs Kara Gordon, Isabel Callejo-Brighton, and John Doe (collectively, "Plaintiffs) because they require certain testing accommodations that can only be effectively provided and securely administered during an in-person administration.  Approximately 79 test-takers require an accommodation for a paper copy of the test questions, 17 test-takers require an accommodation for mid-question restroom breaks, and 7 test-takers require an accommodation for scratch paper on the essay portion of the Bar Exam.

5. Because some of the above-referenced test-takers, including Plaintiffs, have also been granted additional testing time as an accommodation, remote administration for these test-takers would also require customization of their individual remote testing schedules.  The amount of additional testing time per testing session varies greatly from test-taker to test-taker. Individualized remote testing schedules are needed to allow the State Bar to appropriately enforce the start and end times of each test session for remote test-takers who have been granted additional testing time.

6. As the Director of Admissions, I have significant experience in meeting and working closely with vendors who wish to provide software and other products to the State Bar.  Initial meetings are typically fashioned as a "sales pitch."  As I learn more about a vendor's product through, among other things, reference checks and product demonstrations, I am better able to assess the quality and reliability of a vendor's product.

7. In order to maximize the number of remote test-takers for the upcoming Bar Exam, including maximizing the number of remote test-takers with disability-related testing accommodations, the State Bar has gone to considerable efforts to explore the services of new and existing vendors who can assist the State Bar in accomplishing that goal.

8. To date, my team and I have had multiple meetings with multiple vendors, none of whom can guarantee the development and implementation of a new remote proctoring program that will reliably meet the needs of Plaintiffs and other similarly-situated test-takers in the few days before the Bar Exam.

### A.     ExamSoft

9. The State Bar has worked closely with its longtime software vendor, ExamSoft, to develop and implement a remote proctoring program for the First-Year Law Students' Examination (also referred to as the "Baby Bar") and the upcoming Bar Exam within approximately six months.

10. ExamSoft has been partnering with academic, certification, and licensing institutions to deliver high-stakes exams for more than 20 years.

11. The State Bar has explored the possibility of remote live proctoring of certain test-takers through the ExamSoft remote proctoring program.  However, ExamSoft's existing remote proctoring program does not include a live component, nor does it supply test-takers with printable electronic or paper copies of the Bar Exam.  As a result, its existing remote proctoring program has no mechanism for delivering paper test questions or monitoring and enforcing the start and end times for each test session for paper test-takers.

### B.     Zoom

12. I am informed and believe that on September 25, 2020, Assistant Director of Admissions Audrey Ching spoke to a sales representative from Zoom named Tiffany.

13. Tiffany stated that Zoom was not developed for proctoring high-stakes exams.

14. Tiffany stated that Zoom requires constant internet connectivity.

### C.     Prometric

15. I have been in discussions with remote live proctoring vendor Prometric since on or around August 26, 2020, including participating in a demonstration of their remote live proctoring product.

16. I am informed and believe that on September 19, 2020, Ms. Ching contacted Sean Mathias, a representative from Prometric, regarding the feasibility of providing remote live

3

Declaration of Amy Nuñez ISO Opp. to Mot. for Prelim. Injunction                              3:20-cv-06442-LB

proctoring to a small number of test-takers for the upcoming Bar Exam.  Mr. Mathias responded to Ms. Ching's inquiry as follows:  "Short answer is this won't be possible based on the timeline as implementing a full program for exam delivery takes at least 60-90 days.  I know this might sound like a long time, but there are numerous things that go into place to be able to successfully setup and deliver a computer based exam."  A true and correct copy of the September 19-21, 2020 email correspondence between Mr. Mathias and Ms. Ching is attached hereto as **Exhibit A**.

17. I am informed and believe that on September 25, 2020, Mr. Mathias provided Ms. Ching with additional details about the necessary steps to successfully set up and deliver a remote live proctored exam.  Those steps include, but are not limited to: outlining the high-level objectives of the project; introducing support resources that will guide the customer through program implementation; recommending touchpoint communication strategies for a successful transition; taking an in-depth look into the transition process and the steps required for implementation; an overview of all the resources, products, and services dedicated to ensuring the overall success of the program; and best practices and considerations around test development, test delivery, and program communication strategies.

**D.     ProctorTrack**

18. I first contacted ProctorTrack on September 21, 2020, to request a meeting with the appropriate representative to discuss the feasibility of developing and implementing a reliable remote live proctoring program for Plaintiffs and other similarly-situated test-takers before the upcoming Bar Exam.

19. I conducted a meeting with a representative from ProctorTrack, Suseem Hedge, the very next day, on September 22, 2020.  Mr. Hedge arrived to the meeting approximately 40 minutes late.  Mr. Hedge said that ProctorTrack would need approximately one week to develop and implement a remote live proctoring program before the upcoming Bar Exam.  (However, as explained below, I was subsequently informed that ProctorTrack does not have sufficient time to develop a program for the State Bar due to existing client commitments.)

4

Declaration of Amy Nuñez ISO Opp. to Mot. for Prelim. Injunction                                3:20-cv-06442-LB

20. On September 24, 2020, I sent a request for a follow-up meeting with Mr. Hedge. We met at 12:45p.m. that day, and the meeting lasted approximately 40 minutes. Based on our conversation during the meeting, I understand the following to be true:

21. ProctorTrack has been operating since 2013 and is headquartered in India and New York.

22. ProctorTrack has never administered a bar exam or other comparable licensing exam.

23. The basic elements of ProctorTrack's remote live proctoring program are as follows: A test-taker downloads ProctorTrack's program onto their laptop. ProctorTrack does not deliver test questions to test-takers through its program. Rather, when a test-taker is scheduled to begin working on a specific test question, they will need to either open a secure envelope with the relevant test question(s) or print the relevant test question(s) in front of their web camera. They will be monitored for the duration of the question session by a combination of a remote human proctor and AI. If the AI detects suspicious and/or anomalous behavior, the remote human proctor is notified and can communicate with the test-taker via a chat function.

24. In order for ProctorTrack's program to be of any value to Plaintiffs and those similarly-situated, the State Bar will also need to contract and coordinate with mail couriers across the State to securely and reliably deliver the paper test questions to 79 different locations simultaneously and at precise times, or develop and implement a method of secure electronic delivery of downloadable and printable test questions through the State Bar's own website or some other verifiably secure means, and to ensure that all 79 test-takers have a functioning printer that is compatible with ProctorTrack's system requirements. Such a complicated coordinated effort is not possible in light of the State Bar's already limited administrative resources in the days leading up to the Bar Exam.

25. ProctorTrack recommends "onboarding" test-takers to educate them about the use of their program no less than one week prior to the Bar Exam. The onboarding process includes provision of a manual to all test-takers regarding the steps for downloading the ProctorTrack program and accessing the "dummy' test questions.

26. ProctorTrack is unlikely to be able to supply a ratio of one remote human proctor for each test-taker.  Rather, they are more likely to be able to supply a ratio of one remote human proctor for every five to ten test-takers.

27. During my conversation with Mr. Hedge, he asked if it would be possible to postpone the Bar Exam to allow for more time to develop and implement their program for the State Bar's use.  Absent a directive from the Supreme Court of California, the State Bar does not have the authority to postpone the Bar Exam.

28. During my conversation with Mr. Hedge, he indicated that his team was still gathering the necessary data to determine whether a project like this would be possible given their current bandwidth and availability.  He said he would follow up with more information on September 25, 2020.

29. On September 25, 2020, I was contacted by ProctorTrack developer Rajnish Kumar.  We met at 8:16a.m.  The meeting lasted about five minutes.  Based on our conversation during the meeting, I understand the following to be true:

30. When I provided Mr. Kumar with information about the needs of the subject test-taker population, including the number of test-takers who are similarly-situated to Plaintiffs, he asked if the State Bar had any flexibility in the dates of exam administration.  I told him the Bar Exam could not be postponed.

31. Mr. Kumar stated that ProctorTrack does not have sufficient time to develop a program that will reliably meet the needs of Plaintiffs and other similarly-situated test-takers due to other client commitments.

32. Based on the foregoing information, ProctorTrack will be unable to develop and implement a remote live proctoring program that will meet the needs of Plaintiffs and the other test-takers who are similarly-situated in the few days before the Bar Exam.  Even assuming they could develop and implement such a program, there is insufficient time to engage in technical testing that would satisfy the State Bar's concerns about the reliability of an entirely new vendor's product, and test-takers would have minimal or no time to familiarize themselves with the new program.

6

Declaration of Amy Nuñez ISO Opp. to Mot. for Prelim. Injunction                              3:20-cv-06442-LB

### E.     Mettl

33. On September 21, 2020, I contacted Mettl to request a meeting with the appropriate representative(s) to discuss the feasibility of developing and implementing a reliable remote live proctoring program for Plaintiffs and other similarly-situated test-takers before the upcoming Bar Exam.  A representative from Mettl responded on September 22, 2020, and we subsequently made arrangements to meet on September 24, 2020.

34. On September 24, 2020, I met with two representatives from Mettl, Akash Kashyap and Prateek Dhingra.  The meeting lasted one and one-half hours.  Based on our conversation during the meeting, I understand the following to be true:

35. Mettl is a 10-year old subsidiary of Mercer, an American human resources consulting firm and is headquartered in India.

36. Delivering education-related and/or licensing-related examinations has not been Mettl's primary business focus.  Rather, prior to the current public health crisis, Mettl was primarily engaged in the delivery of recruitment-related examinations for private companies' use in the recruitment and hiring process.  Only recently, due to the current public health crisis, Mettl identified an increased need in the market for the remote delivery of education-related and/or licensing-related examinations and thereafter adapted its technology and/or developed new technology for that purpose.

37. The basic elements of Mettl's remote live proctoring program are as follows:  A test-taker downloads Mettl's program onto their laptop.  The test-taker can access individual test question links that permit the test-taker to view the test questions and type and upload their answer files during specified windows of time.  During that time, a test-taker is monitored by a remote human proctor and by Artificial Intelligence (AI) simultaneously.

38. The minimum amount of time Mettl needs to recruit and ensure the availability of a sufficient number of remote human proctors for the Bar Exam is five days.

39. It is not clear if or how Mettl's program will account for secure and synchronized paper delivery of the test questions to approximately 79 test-takers.

40. In order for Mettl's program to be of any value to Plaintiffs and those similarly-situated, the State Bar will also need to contract and coordinate with mail couriers across the State to securely and reliably deliver the paper test questions to 79 different locations simultaneously and at precise times. Or to develop and implement a method of secure electronic delivery of downloadable and printable test questions through the State Bar's own website or some other verifiably secure means, and to ensure that all 79 test-takers have a functioning printer that is compatible with Mettl's system requirements. Such a complicated coordinated effort is not possible in light of the State Bar's already limited administrative resources in the days leading up to the Bar Exam.

41. In order to customize test-taker test schedules (due to differing amounts of testing time) for Plaintiffs and the other similarly-situated test-takers, Mettl will need to develop unique test session links for all potential test schedule variations. Mettl would therefore need from the State Bar a specific set of instructions for the customization of test schedules for Plaintiffs and other similarly-situated test-takers. Compiling and organizing this information for Mettl's use is likely to take no fewer than 8 hours (*i.e.,* one business day) and would significantly detract from the State Bar's already limited administrative resources in the days leading up to the Bar Exam.

42. Mettl will also require the State Bar to dedicate time and resources to uploading each test question into Mettl's program for all potential test schedule variations. Because the Bar Exam includes 100 multiple-choice test questions, this process will take a minimum of 16 hours (*i.e.*, two business days) but likely much longer to complete. I am further informed and believe that attempting to complete this process in the days leading up to the Bar Exam could result in the questions not being displayed properly to the test-taker.

43. Mettl's program requires constant internet connectivity at a minimum internet speed of 150 Mbps. By contrast, the State Bar's existing remote proctoring vendor, ExamSoft, does not require constant internet connectivity and, when internet connectivity is necessary for limited purposes, the minimum internet speed required is only 2 Mbps.

44. In order to utilize Mettl's "plug-in" to disable other programs from operating on the test-taker's laptop during the exam—as is necessary to preserve exam security and integrity—

Mettl would need at least one to two weeks to test this feature with the relevant population of test-takers. The "plug-in" is only compatible with a Windows operating system and is not compatible with a Mac operating system. By contrast, the State Bar's existing remote proctoring vendor, ExamSoft, has been able to implement this feature for both Windows and Mac operating systems.

45. Based on the foregoing, as well as my knowledge and experience in working closely with ExamSoft to develop and implement the State Bar's first remote-administered Bar Exam and the representation from another trusted remote live proctor vendor that development and implementation of a reliable remote live proctoring program would take no fewer than 60 to 90 days, I have concluded that Mettl will be unable to develop and implement a remote live proctoring program that will meet the needs of Plaintiffs and other similarly-situated test-takers in the few days before the Bar Exam. Even assuming a vendor could develop and implement such a program, there is insufficient time to engage in technical testing that would satisfy the State Bar's concerns about the reliability of an entirely new vendor's product, and test-takers would have minimal or no time to familiarize themselves with the new program.

1 | I declare under penalty of perjury under the laws of the United States that the foregoing is
2 | true and correct to the best of my knowledge.

4 | Executed on September 25, 2020, at San Francisco, California

*[signature]*

AMY NUÑEZ

# EXHIBIT A

| | |
|---|---|
| **From:** | Mathias, Sean |
| **To:** | Ching, Audrey |
| **Subject:** | RE: Remote proctoring |
| **Date:** | Monday, September 21, 2020 10:13:21 AM |

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Audrey,

Thanks for reaching out.

Short answer is this won't be possible based on the timeline as implementing a full program for exam delivery takes at least 60-90 days. I know this might sound like a long time, but there are numerous things that go into place to be able to successfully setup and deliver a computer based exam.

Happy to discuss the details over a call or if we have additional time this Wednesday after the item banking demo.

Thanks.

SM

-----Original Message-----
From: Ching, Audrey <Audrey.Ching@calbar.ca.gov>
Sent: Saturday, September 19, 2020 1:08 PM
To: Mathias, Sean <Sean.Mathias@Prometric.com>
Subject: Remote proctoring

External Sender

Be Careful! This email originated from outside the organization.
Do not click links or open attachments unless you validate the sender and know the content is safe.
DO NOT provide your username or password.

Hi Sean,

Adrian arranged a demo for our group recently, and I wanted to see if you could answer a specific follow up question for me today.

If we needed to use Prometric's live remote proctoring for just a handful of applicants for our October 5 &6 bar exam, let's say 5, could you ballpark the cost for me? We're running into some issues with accommodated applicants and the remote assessment model we have in place.

Thanks for taking the time!

Audrey Ching
Assistant Director, Admissions
213.503.9308