VANESSA L. HOLTON (111613)
General Counsel
ROBERT G. RETANA (148677)
Deputy General Counsel
JAMES J. CHANG (287008)
Assistant General Counsel
CAROLINE W. HOLMES (29916)
Assistant General Counsel
OFFICE OF GENERAL COUNSEL
THE STATE BAR OF CALIFORNIA
180 Howard Street
San Francisco, CA 94105-1639
Tel: (415) 538-2381
Fax: (415) 538-2321
Email: james.chang@calbar.ca.gov

Attorneys for Defendants State Bar of California
and Donna Hershkowitz

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARA GORDON, ISABEL CALLEJO-BRIGHTON and JOHN DOE,<br><br>Plaintiffs,<br><br>v.<br><br>STATE BAR OF CALIFORNIA, DONNA HERSHKOWITZ, and NATIONAL CONFERENCE OF BAR EXAMINERS,<br><br>Defendants. | Case No. 3:20-cv-06442-LB<br><br>**SUPPLEMENTAL DECLARATION OF JEFFREY D. KLAUSNER, M.D., M.P.H., IN SUPPORT OF OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |

I, Dr. Jeffrey D. Klausner, declare as follows:

1. I submit this supplemental declaration in support of Defendants Donna Hershkowitz's and State Bar's Opposition to Plaintiffs' Motion for Preliminary Injunction.

2. I have reviewed Plaintiffs' surreply (Dkt. 51), which makes certain statements regarding sources I cited in my initial declaration (Dkt. 44-1).

3. Specifically, Plaintiffs state incorrectly that the studies I cited in footnotes 18 and 20 of my initial declaration have not been peer-reviewed. In fact, these studies *have* been submitted for peer-review: one has completed peer-review and one is under peer-review.[1]

4. Peer-review is the process whereby after submission of a new article to a scientific journal, that article is submitted to scientific peers for review.[2] Typically, an article may have 2-4 peer reviewers. Peer review can take typically 8-12 weeks. After review, the editor compiles the peer reviewer comments and shares them with the authors for consideration. The authors then revise their original article based on the comments from the peer reviewers. The authors may or may not incorporate every recommendation put forth by the peer reviewers. The authors will then submit their revised article to the editor for editorial review. The editor will then determine if the revised article is satisfactory for publication.

5. Regarding the study cited in footnote 18 of my initial declaration, "Estimation of Individual Probabilities of COVID-19 Infection, Hospitalization, and Death From A County-level Contact of Unknown Infection Status," this study completed the peer review process on August 14, 2020 and is now in the process of revision and editorial review for publication in the peer-reviewed journal *PLOS ONE*.[3]

6. Regarding the study cited in footnote 20 of my initial declaration, "Household transmission of SARS-CoV-2: a systematic review and meta-analysis of secondary attack rate," this study has been reviewed by the editor and was sent out for peer review on August 19, 2020 in the journal *JAMA Network Open*.[4]

---

[1] It appears that Plaintiffs may have reached their mistaken belief about the peer-reviewed status of these articles due to the description on the websites cited in my initial declaration. However, as explained below, that description is outdated because both of these articles were submitted for peer-review subsequent to their posting on those websites.

[2] *See* https://www.elsevier.com/reviewers/what-is-peer-review.

[3] https://journals.plos.org/plosone/

[4] https://jamanetwork.com/journals/jamanetworkopen

7. Because both studies were initially reviewed by an expert editor and sent out for peer review, the studies have valid findings worthy of consideration.  Furthermore, as stated by an initial peer reviewer of the Bhatia et al manuscript ("Estimation of Individual Probabilities of COVID-19 Infection, Hospitalization, and Death From A County-level Contact of Unknown infection Status") the study describes "*a technically sound piece of scientific research with data that support the conclusions.*" If the studies were not valid, the studies would have been rejected either outright by the initial editorial review process or returned to the editor with a determination to "reject" by the peer-reviewers.

8. Regarding Plaintiffs' comparisons to HIV infection (footnote 3 of Plaintiffs' surreply), this comparison may not be appropriate because HIV is a life-long infection with 100% mortality if untreated.  By contrast, the mortality of COVID-19 infection is less than 1% if untreated.[5]   The conditions are not the same and the risks are not comparable.

9. Regarding Plaintiffs' assertion that there is a dearth of reliable data about the impact of COVID-19 on people with disabilities, that general statement is misleading in light of the individualized nature of disabilities and the differential impact of COVID-19 on different types of conditions.

10. The CDC states on their website, as of September 11, 2020, "Disability alone may not be related to higher risk for getting COVID-19 or having severe illness. Most people with disabilities are not inherently at higher risk for becoming infected with or having severe illness from COVID-19."[6] However, there can be an association between disability and other chronic conditions that may increase the risk of Covid-19; so while disability itself may not be a risk factor, it could be a risk marker, identifying those with higher risk due to other medical conditions.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 29, 2020, at Los Angeles, California

JEFFREY D. KLAUSNER, M.D., M.P.H.

---

[5] "Humoral Immune Response to SARS-CoV-2 in Iceland," *New England Journal of Medicine*, September 1, 2020, available at https://www.nejm.org/doi/full/10.1056/NEJMoa2026116.

[6] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-disabilities.html#:~:text=Disability%20alone%20may%20not%20be,severe%20illness%20from%20COVID%2D19.