1

2

3

4

5

6

7

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                       San Francisco Division

11   KARA GORDON, et al.,                    Case No. 20-cv-06442-LB

12                 Plaintiffs,
                                             **ORDER DENYING MOTION FOR A**
13         v.                                **PRELIMINARY INJUNCTION**

14   STATE BAR OF CALIFORNIA, et al.,         Re: ECF No. 6

15                 Defendants.

16

17                              **INTRODUCTION**

18         The three plaintiffs in this lawsuit — all with disabilities that preclude their taking the October

19   5–6, 2020 California bar exam remotely under the State Bar of California's current testing

20   requirements — sued the State Bar and the National Conference of Bar Examiners ("NCBE") and

21   moved for a preliminary injunction to enjoin the State Bar from requiring them to take the bar in

22   person. In the complaint, the plaintiffs contend that the defendants' failure to accommodate their

23   inability to comply with three remote-testing conditions — no bathroom breaks during a test

24   session, no paper tests, and no physical scratch paper — violates (1) Title II of the Americans with

25   Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 *et seq.* (claim one against the State Bar), (2)

26   Title III of the ADA (claim two against the NCBE), and (3) California's Unruh Civil Rights Act,

27

28

Cal. Civ. Code § 51 *et seq.* (claim three against the NCBE).[1] In the motion, they contend that they are likely to succeed on the merits of their ADA claims because the defendants' "two-tiered system" facially discriminates against disabled test takers, burdens and disproportionately impacts them, and denies them equal and meaningful access to the exam. They contend too that the defendants can accommodate their inability to comply with the remote-testing requirements, without undue burden, and that absent that accommodation, they will suffer irreparable harm through heightened risk of COVID-19 infection, poor performance because of the resulting stress, and for one plaintiff, possible postponement of an important surgery.[2]

The State Bar opposed the motion on the grounds that the plaintiffs are not likely to succeed on the merits of their claims because (1) its remote rules that promote exam security do not discriminate because they are neutral, and its in-person test procedures — with heightened COVID-19 protocols developed by an epidemiologist (including private hotel rooms for each test taker) — allow equal and safe access to the exam, and (2) the plaintiffs' proposed accommodations would require it — in a short time — to implement new systems, causing undue burden. It also contends that the plaintiffs have not established irreparable harm, given the COVID-19 protocols, the lowering of the passing score for the bar by 50 points, and its establishment of a provisional-licensing program that allows law-school graduates who have not yet passed a bar exam to practice law until June 2022.[3]

The NCBE has authorized the State Bar to offer paper versions of the Multistate Bar Examination ("MBE") remotely, but, it contends, the State Bar makes the decisions about how it will administer the exam to ensure its fairness and integrity.[4] It thus opposed the motion on the ground that the plaintiffs are not likely to succeed on the merits of their claims because (1) they lack Article III standing for claims against the NCBE because the State Bar is the decisionmaker,

---

[1] First Am. Compl. ("FAC") – ECF No. 24. Citations refer to the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[2] Mot. – ECF No. 6 at 26–31; Reply to State Bar Opp'n – ECF No. 47 at 14–20; Reply to NCBE Opp'n – ECF No. 47-1 at 6–11.

[3] State Bar Opp'n – ECF No. 44 at 7–29.

[4] NCBE Opp'n – ECF No. 42 at 8–9.

1    not the NCBE, and (2) the ADA claim against it fails, in part because the NCBE has complied

2    with the rules that apply to it and in any event has authorized remote testing. It also contends that

3    the plaintiffs have not established irreparable harm (largely for the reasons that the State Bar

4    advances) or the other elements for preliminary-injunctive relief.[5]

5         The court denies the motion. On this record, in October 2020, the plaintiffs are not likely to

6    succeed on the merits of their claims and have not established irreparable harm.

7

8                                    **STATEMENT**

9         The State Bar of California is administering the October 2020 exam to 10,043 test takers.

10   9,600 will take the test remotely, including 462 remote test takers who were granted

11   accommodations related to their disabilities. 443 test takers, including 195 test takers who were

12   granted accommodations due to their disabilities, will take the test in person.[6]

13        The State Bar has requirements for taking bar remotely, including technical requirements (such

14   as a laptop with a functional webcam and a reliable internet connection) and the ability to comply

15   with remote-testing conditions.[7] The in-person test takers who do not have disabilities generally

16   were unable to comply with remote-testing requirements such as a laptop with a webcam and

17   reliable access to the internet.[8] The plaintiffs were unable to comply with one or more of the

18   following remote-testing conditions: (1) the ability to stay in view of the webcams for each testing

19   session, meaning, test takers can leave the webcam only for scheduled breaks; (2) an agreement

20   not to use physical scratch paper during the essay portion of the bar exam; and (3) taking the bar

21   exam via the ExamSoft software program, which delivers test questions at timed intervals,

22   monitors test takers to ensure that there is no cheating, and is entirely electronic, which means that

23   remote test takers cannot use a paper exam.[9] The three plaintiffs here undisputedly have

24

25   [5] *Id.* at 13–16.

     [6] Hershkowitz Decl. – ECF No. 44-1 at 9 (¶¶ 49–50).

26   [7] *Id.* at 5 (¶¶ 23–25) & Acknowledgment of Testing Requirements, Ex. E to *id.*, ECF No. 44-1 at 51–56.

27   [8] Hershkowitz Decl. – ECF No. 44-1 at 9 (¶ 49).

28   [9] *Id.* at 5–9 (¶¶ 23–46).

United States District Court
Northern District of California

disabilities that preclude their compliance with one or more of the three testing conditions, and for that reason, the State Bar granted their requests for testing accommodations, including (for example) additional testing time, private rooms for testing, printed test materials, and mid-session bathroom breaks.[10] The issue thus is only whether the ADA requires the defendants to accommodate the plaintiffs' disabilities by allowing them to take the bar exam remotely. Facts relevant to that issue are summarized in the next sections: (1) the State Bar's protocols for administering the October 2020 bar exam, and (2) the plaintiffs' proposals for accommodating their disabilities remotely.

## 1. The State Bar's Administration of the October 2020 Bar Exam

Usually the State Bar — an administrative arm of the California Supreme Court — administers the bar exam twice a year, in person, in a timed, closed-book, two-day examination that includes essay questions, a performance test, and the NCBE's Multistate Bar Examination ("MBE").[11] If test takers need an accommodation, they must petition the State Bar, which grants hundreds of testing-accommodation requests for every administration of the exam.[12]

To address the impact of COVID-19, the Supreme Court of California — rather than cancelling the bar exam — implemented remote administration of the exam, hired an epidemiologist to develop a protocol for in-person exam takers, and allowed 2020 law-school graduates to provisionally practice law through June 1, 2022 without passing a bar exam.[13] The main issue here is the COVID-19 protocol for in-person exam takers.

---

[10] *Id.* at 11–12 (¶¶ 60–62) & Testing Accommodations Notices, Exs. G–I to *id.* – ECF No. 44-1 at 78–86.

[11] Hershkowitz Decl. – ECF No. 44-1 at 3 (¶¶ 10–11).

[12] *Id.* (¶ 9)

[13] *Id.* at 3 (¶¶ 13–15) & Letters, Exs. A–C to *id.* – ECF No. 44-1 at 19–31.

United States District Court
Northern District of California

United States District Court
Northern District of California

The State Bar developed its COVID-19 protocol with the assistance of an infectious-disease expert and epidemiologist, Jeffrey Klausner, M.D., M.P.H.[14] The protocol adheres to best practices, as recommended by the Centers for Disease Control and Prevention and the California Department of Public Health, and it includes the following: (1) each test taker has a private hotel room; (2) face coverings are mandatory for all staff and exam takers; (3) alcohol-based disinfectants are available for hand use; (4) there will be designated site-safety leaders; (5) measures will be implemented to reduce the occupancy of communal areas, lunch areas, and restrooms to reduce crowding and possible COVID-19 exposure; (6) environmental interventions — such as the opening of windows and doors and the use of outside registration tables — will be used; and (7) the State Bar's COVID-19 Code of Conduct will be followed (including taking the temperature of those entering the testing location).[15] The hotels have safety, cleaning, disinfection, and COVID-19 prevention plans that are consistent with best practices in the industry and that will lower the risk of COVID-19 transmission.[16] Dr. Klausner concludes that the bar exam may be conducted safely and that the risk of infection (associated with attending the examination and staying in a single, private hotel room) is less than visiting a grocery store and is not greater than visiting a bank."[17]

In response to the plaintiffs' challenge to two of Dr. Klausner's sources on the ground that there has been no peer review of them, Dr. Klausner's supplemental declaration establishes that they have been submitted for peer review.[18] He also responds to the plaintiffs' contentions about the risks of COVID-19 (including to disabled persons): most persons with disabilities are not at

---

[14] Hershkowitz Decl. – ECF No. 44-1 at 10 (¶ 54); Klausner Decl. – ECF No. 44-2 (recounting his substantial credentials, the plan, and his opinion that the individual plaintiffs may take the bar examination safely in person).

[15] Klausner Decl., ECF No. 44-2 at 6–7 (¶¶ 36–50); Healthy Exam Plan, Ex. B to *id.* – ECF No. 44-2 at 24–36.

[16] Klausner Decl., ECF No. 44-2 at 8 (¶¶ 50–51).

[17] *Id.* at 8 (¶ 52).

[18] Sur-Reply to State Bar's Opp'n – ECF No. 50-1 at 5–6; Klausner Supp. Decl. – ECF No. 53 at 2–3 (¶¶ 3–7).

higher risk for COVID-19, and there can be an association between disability and other chronic conditions that may increase the risk of COVID-19.[19]

### 2.   The Plaintiffs' Proposals for Accommodating Their Disabilities Remotely

The plaintiffs have disabilities that do not allow them to comply with one or more of the three remote-testing conditions at issue in the litigation: no bathroom breaks during a test session, no paper tests, and no physical scratch paper.[20] All plaintiffs submitted declarations that they (1) have hardships related to their employment if they do not take the bar examination now and (2) fear poor performance on an in-person exam because of their stress about COVID-19.[21]

The plaintiffs also identify other COVID-19 concerns. Plaintiff I.C.-B. has asthma, a risk factor for COVID-19.[22] Plaintiff John Doe's wife is pregnant with twins and has asthma, and he is concerned about the risk that in-person test taking poses to her.[23] Plaintiff K.G. has a surgery scheduled on October 13, 2020 (a week after the bar exam) to ameliorate symptoms associated with K.G.'s disability (a cerebrospinal-fluid leak that increases the risk of serious illness from COVID-19).[24] K.G.'s doctor — a specialist at Stanford — requires K.G. to take a COVID-19 test two to three days before the surgery, socially distance by at least six feet, and ensure proper handwashing.[25] Exposure to COVID-19 might require rescheduling the surgery, causing hardship.[26] The plaintiffs' expert recommends that K.G. take the bar exam remotely.[27]

---

[19] Klausner Supp. Decl. – ECF No. 53 at 3 (¶¶ 9–10).

[20] The State Bar approved John Doe's application to take the exam remotely. Hershkowitz Decl. – ECF No. 44-1 at 11 (¶ 62) (the State Bar granted John Doe's petition for additional testing time, testing in a private room, and permission to circle MBE answers in the MBE question book; State Bar staff will transfer the answers to the MBE answer sheet later; John Doe did not ask to take a paper test).

[21] Gordon Supp. Decl. – ECF No. 47-4 at 6 (¶¶ 20–21); Callejo-Brighton Supp. Decl. – ECF No. 47-5 at 4 (¶¶ 13–15); Doe Supp. Decl. – ECF No. 47-6 at 4–5 (¶¶ 11–12).

[22] Callejo-Brighton Decl. – ECF No. 6-1 at 2 (¶ 7).

[23] Doe Supp. Decl. – ECF No. 47-6 at 3–4 (¶¶ 8–9).

[24] Gordon Decl. – ECF No. 6-3 at 7 (¶ 21).

[25] FAC – ECF No. 24 at 13 (¶ 36); Gordon Decl. – ECF No. 6-3 at 7 (¶ 22).

[26] Gordon Supp. Decl. – ECF No. 47-4 at 5 (¶ 16).

[27] Graves Decl. – ECF No. 6-4 at 10 (¶ 33) (filed before the State Bar submitted its COVID-19 protocol).

United States District Court
Northern District of California

The plaintiffs contend that the State Bar can accommodate their inability to comply with the at-issue testing conditions — no bathroom breaks during a test session, no paper tests, and no physical scratch paper — easily and without undue burden.

Disabled test takers who need bathroom breaks during test sessions can scan the bathroom at the beginning of the test day to prove the absence of unauthorized material, announce their need for a break on camera, take the laptop to the bathroom and leave it outside, use the bathroom privately, and collect the laptop upon leaving.[28] (The D.C. Bar accommodates mid-session breaks for remote test takers.[29])

Disabled test takers who need paper exams can receive them by courier or through a secure file transfer that they print in front of a proctor.[30] The State Bar can proctor the exam through ExamSoft (in the same way it proctors other remote test takers) and through Zoom (via a second device that captures the workspace with the paper exam).[31] Human proctors can use Zoom breakout rooms or a dedicated Zoom session to proctor and record each test session.[32] Third-party vendors are available for this project.[33] The typed essay and performance tests can be uploaded to Dropbox (or a similar file-transfer service) or returned through ExamSoft.[34] The hand-marked MBE answers can be sealed in front of the human proctor and returned by courier, or the test taker can photograph the pages in front of the proctor and upload them to Dropbox (or a similar service).[35] A courier can collect the exam pages.[36] (The NCBE told the State Bar that it was

---

[28] Gonzales Decl. – ECF No. 23 at 7 (¶ 22).

[29] Reply to State Bar Opp'n – ECF No. 47 at 11–12.

[30] Gonzales Decl. – ECF No. 23 at 4 (¶ 16).

[31] *Id.* at 4–5 (¶ 16).

[32] *Id.*

[33] *Id.* at 3 (¶10), 7 (¶ 21).

[34] *Id.* at 5 (¶ 16).

[35] *Id.*

[36] *Id.*

United States District Court
Northern District of California

"open" to having the written exam proctored either (1) in person at the test taker's home by a proctor retained by the Bar or (2) by a remote service such as a secure Zoom meeting.[37])

Disabled test takers who need physical scratch paper can use the paper-test protocol for detecting concealed pages and can use their webcam to scan a finite number of pages before each test session.[38]

In addition to authorizing the State Bar to allow remote test takers to take a written MBE, the NCBE points to "the State Bar's independent role in determining how it will administer its bar examination so as to fulfill its important mission in licensing lawyers in the State of California. Exam security is a critical part of ensuring the fairness and integrity of any examination that is used as part of a state's process for licensing professionals and protecting the general public."[39]

According to the State Bar, the plaintiffs' proposals are not feasible. Virtual monitoring during an entire test session allows the State Bar to verify that a test taker is not cheating during the closed-book exam.[40] It is difficult to verify by webcam whether physical scratch paper is blank or has hidden notes.[41] Distribution of the secure ExamSoft software program prevents unauthorized disclosure of test questions and preserves the security and integrity of the exam.[42]

The State Bar's admissions director provides more information about test takers with disabilities that preclude their compliance with the at-issue testing conditions: 79 test takers require paper copies of the test questions, 17 require mid-session restroom breaks, and 7 require physical scratch paper.[43] Because remote test takers have other accommodations — such as additional testing time — remote administration would require customization of the remote-testing schedules.[44] The director and her team met with "multiple vendors" (including ExamSoft, Zoom,

---

[37] Email, Ex. E to Hill Decl. – ECF No. 43-5 at 2.

[38] Mot. – ECF No. 6 at 3.

[39] NCBE Opp'n – ECF No. 42 at 9.

[40] Hershkowitz Decl. – ECF No. 44-1 at 7 (¶ 35).

[41] *Id.* at (¶ 38).

[42] *Id.* at 9 (¶ 46).

[43] Nunez Decl. – ECF No. 48 at 2 (¶¶ 2–4).

[44] *Id.* (¶ 5).

United States District Court
Northern District of California

Prometric, ProctorTrack, and Mettl), but "none . . . can guarantee the development and implementation of a new remote proctoring program that will reliably meet the needs of Plaintiffs and other similarly situated test takers."[45] The State Bar has worked for months to test the remote administration of the bar exam, and it is not feasible to do the same now for 100 test takers.[46]

### 3. Procedural History

The plaintiffs filed their complaint on September 14, 2020, and moved for a preliminary injunction on September 15, 2020, attaching a proposed order that asked the court to "restrain and enjoin" the defendants from "[r]equiring Plaintiffs to take the California Bar Examination in-person instead of virtually with the accommodations to which they are entitled and have been granted."[47] The plaintiffs amended the complaint to add an additional State Bar defendant.[48] On September 21, 2020, they filed a new proposed order that asked the court to "restrain and enjoin" the defendants from (1) "[r]equiring Plaintiffs to take the California Bar Examination in person instead of remotely with the accommodations to which they are entitled and have been granted; and (2) "[r]equiring all other test takers with disabilities who are approved for paper copies of the exam and/or unscheduled bathroom breaks to take the California Bar Exam in person instead of remotely with the accommodations to which they are entitled and have been granted."[49] All parties consented to the undersigned's jurisdiction.[50] The court held a hearing on September 30, 2020.

### STANDARD OF REVIEW

The standards for a TRO and a preliminary injunction are the same. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., Inc.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001). A movant must demonstrate

---

[45] *Id.* at 3–9 (¶¶ 8–45); Nunez Supp. Decl. – ECF No. 54-1 (recounting the State Bar's ongoing efforts to explore the feasibility of remote monitoring and delivery of paper exams).

[46] Hershkowitz Decl. – ECF No. 44-1 at 12 (¶ 63), 16–17 (¶¶ 87–93).

[47] Compl. – ECF No. 1; Mot. – ECF No. 6; Proposed Order – ECF No. 6-7.

[48] FAC – ECF No. 24.

[49] Am. Proposed Order – ECF No. 37.

[50] Consents – ECF Nos. 13, 14, 16.

United States District Court
Northern District of California

1  (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm that would result if

2  an injunction were not issued, (3) the balance of equities tips in favor of the plaintiff, and (4) an

3  injunction is in the public interest. *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

4  The irreparable injury must be both likely and immediate. *Id*. at 20–22. "[A] plaintiff must

5  demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief."

6  *Caribbean Marine Serv. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

7      Before *Winter*, the Ninth Circuit employed a "sliding scale" test that allowed a plaintiff to

8  prove either "(1) a likelihood of success on the merits and the possibility of irreparable injury; or

9  (2) serious questions going to the merits were raised and the balance of hardships tips sharply in

10  its favor." *Walczak v. EPL Prolong, Inc*., 198 F.3d 725, 731 (9th Cir. 1999) (cleaned up). On this

11  continuum, "the greater the relative hardship to [a movant], the less probability of success must be

12  shown." *Id*. After *Winter*, the Ninth Circuit held that although the Supreme Court invalidated one

13  aspect of the sliding scale approach, the "serious questions" prong of the sliding scale survived if

14  the plaintiff satisfied the other elements for preliminary relief. *Alliance for Wild Rockies v.*

15  *Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011). Thus, a preliminary injunction may be

16  appropriate when a movant raises "serious questions going to the merits" of the case and the

17  "balance of hardships tips sharply in the plaintiff's favor," provided that the other elements for

18  relief are satisfied. *Id*. at 1134–35.

19

20                                       **ANALYSIS**

21      The plaintiffs contend that (1) they are likely to succeed on the merits of their ADA claims that

22  by requiring them to test in person (because they cannot comply with one or more of the three

23  remote-testing conditions of no bathroom breaks during a test session, no paper tests, and no

24  physical scratch paper), the defendants discriminate against them, and (2) they otherwise satisfy

25  the other elements for preliminary-injunctive relief.[51] The defendants counter that the plaintiffs

26

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

28  [51] Mot. – ECF No. 6 at 26–32; Reply to State Bar Opp'n – ECF No. 47 at 14–20; Reply to NCBE Opp'n – ECF No. 47-1 at 5–11.

United States District Court
Northern District of California

have not shown a likelihood of success on the merits of their claims, irreparable harm, or standing for claims against the NCBE.[52] The court denies the plaintiffs' motion because on this record, in October 2020, the plaintiffs have not established that they are likely to succeed on the merits of their claims or shown irreparable harm.

### 1. Likelihood of Success on the Merits: ADA Claim Against the State Bar

The State Bar undisputedly granted the plaintiffs their requests for accommodations (such as paper tests and mid-session bathroom breaks), albeit through in-person testing. The parties dispute whether the ADA requires the State Bar to further accommodate the plaintiffs by allowing them to take the exam remotely. On this record, it does not.

Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, prohibits discrimination on the basis of a disability in the programs, services, or activities of a public entity. Federal regulations require a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). The elements of a claim under Title II of the ADA are as follows: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

On this record, in October 2020, the plaintiffs have not shown a likelihood of success on the merits because the State Bar's criteria for remote testing do not discriminate: they are neutral facially and as applied to the plaintiffs, and they ensure equal access to the October 2020 exam. In

---

[52] State Bar Opp'n – ECF No. 44 at 17–30; NCBE Opp'n – ECF No. 42 at 10–19.

any event, as the State Bar contends, the plaintiffs' proposed accommodations impose undue burden on the State Bar and are not feasible before the October exam.

### 1.1    The Criteria for Remote Testing are not Discriminatory

The plaintiffs contend that they are likely to prevail on the merits of the ADA claim that the remote-testing requirements are facially discriminatory, burden them disproportionately, and deny them equal and meaningful access to the exam.[53] The plaintiffs have not established that they are likely to succeed on the claim.

First, the conditions of remote testing do not facially discriminate against the plaintiffs. A facially discriminatory policy is one that categorically excludes disabled persons from participation in a public program. *Lovell v. Chandler*, 303 F.3d 1039, 1057 (9th Cir. 2002). To support their claims of facial discrimination, the plaintiffs cite cases where municipal ordinances bar methadone clinics.[54] *See Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 733–34 (9th Cir. 1999); *MX Group, Inc. v. City of Covington*, 293 F.3d 326, 344–45 (6th Cir. 2002). But the ordinances in those cases target disabled persons receiving treatment for drug addiction. By contrast, the State Bar's security-related remote-testing conditions apply to all test takers.

The plaintiffs, citing *Lovell*, nonetheless contend that the three challenged remote-testing conditions (as opposed to other equipment-based conditions) apply only to disabled persons.[55] 303 F.3d at 1054. Again, they do not. In *Lovell*, the Ninth Circuit affirmed the district court's partial summary-judgment in favor of the plaintiffs and against the state of Hawaii under the ADA and § 504 of the Rehabilitation Act based on Hawaii's exclusion of certain disabled persons from its health-insurance program. *Id.* at 1044. By contrast, the challenged remote-testing conditions do not apply only to disabled test takers and instead apply to all test takers.

---

[53] Mot. – ECF No. 6 at 26–30; Reply to State Bar Opp'n – ECF No. 47 at 14–18.

[54] Mot. – ECF No. 6 at 26–27.

[55] Reply to State Bar Opp'n – ECF No 47 at 14–15 (citation omitted).

1    In sum, to prevail on a facial challenge, the plaintiffs must show that "no set of circumstances

2    exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

3    They have not.

4    Second, on this record, the conditions do not burden the plaintiffs disproportionately. Most of

5    the in-person test takers are not disabled. Of the 657 test takers with disability-related

6    accommodations, the State Bar approved 462 (or 70 percent) for remote testing. The plaintiffs

7    counter that 195 (or 44 percent) of the in-person test takers are disabled persons with testing

8    accommodations.[56] But this number does not necessarily establish that the State Bar denied the

9    plaintiffs "meaningful access to state-provided services." *Crowder v. Kitagawa*, 81 F.3d 1480,

10   1484 (9th Cir. 1996) (cleaned up) (citing *Alexander v. Choate*, 469 U.S. 287, 302 (1985)). There

11   are practical limits — given the safety and security issues with the administration of the bar exam

12   in person and remotely — to the State Bar's ability in October 2020 to accommodate all needs

13   remotely.

14   Third, the plaintiffs have not shown that they are likely to succeed on the merits of their claim

15   that the remote-testing conditions deny them equal and meaningful access to the exam. Their main

16   argument is that disabled test takers must either test remotely without their accommodations or

17   test in person with their accommodations and risk catching COVID-19.[57] The concern about

18   COVID-19 contagion applies to all in-person test takers. Moreover, with its infectious-disease

19   expert and epidemiologist, the State Bar has implemented safety measures — including private

20   rooms and other COVID-19 protocols — for in-person test takers who cannot use the remote

21   format. The plaintiffs do not meaningfully challenge the State Bar's evidence that the protocols

22   are consistent with best practices, lower the risk of COVID-19 transmission, and allow the State

23   Bar to administer the bar exam safely.

24   Instead, the plaintiffs argue that a public entity's programs must be equally safe for disabled

25   and non-disabled persons and that the State Bar's remote-testing conditions violate that

26

27   [56] *Id.* at 16.

28   [57] Mot. – ECF No. 6 at 27–30; Reply to State Opp'n – ECF No. 47 at 16–18.

United States District Court
Northern District of California

principle.[58] The cases they cite do not compel the conclusion that the State Bar provides unequally

safe programs. *See California Sch. for the Blind v. Honig*, 736 F.2d 538, 545–46 (9th Cir. 1984);

*Putman v. Oakland Unified Sch. Dist.*, No. C-93-3772-CW, 1995 WL 873734, at *13 (N.D. Cal.

June 9, 1995). In *California School for the Blind*, the Ninth Circuit affirmed the district court's

preliminary injunction ordering school officials to conduct additional tests to ensure seismic safety

or to close the school. 736 F.3d at 540. In *Putnam*, the district court addressed the existence of

architectural barriers (such as excessively steep wheelchair ramps and heavy doors) that made

Oakland schools inaccessible to students in wheelchairs. 1995 WL 873734, at *1, 14. Both cases

involved barriers affecting only disabled persons, and neither supports the conclusion that the

State Bar's testing conditions and protocols — which apply to all test takers — violate the ADA in

October 2020, especially given the considerable efforts that the State Bar has taken to administer

the bar safely and securely to over 10,000 test takers.

### 1.2    The Plaintiffs' Proposed Accommodations Impose Undue Burden

The State Bar contends that implementing the plaintiffs' proposed accommodations — in the

form of couriers and remote proctoring, for example — would be a fundamental alteration to its

administration of the bar exam.[59] The plaintiffs' procedures are untested, the State Bar has

evaluated them with vendors and cannot implement them on this timeline, and at this point, they

apparently would disrupt the overall administration of the exam. Thus, even if the State Bar's

remote-testing conditions are discriminatory, the plaintiffs' relief would be a fundamental

alteration that imposes an undue burden on the State Bar.

The ADA does not require the State Bar "to take any action that it can demonstrate would

result in a fundamental alteration in the nature of the service, program, or activity or in undue

financial and administrative burden." 28 C.F.R. § 35.164. Even if the remote-testing conditions

result in a disproportionate or undue burden on disabled persons, the court determines whether the

---

[58] Mot. – ECF No. 6 at 19 (citations omitted); Reply to State Opp'n – ECF No. 47 at 17 (citations
omitted).

[59] State Bar Opp'n – ECF No. 44 at 22–24.

plaintiffs' proposed modifications to the conditions are reasonable or whether they require fundamental alterations to the program. *Crowder*, 81 F.3d at 1485.

Accommodating the plaintiffs would require different procedures for roughly 100 test takers, some with additional accommodations such as an extended time to take the exam. The plaintiffs do not meaningfully challenge the State Bar's evidence about feasibility and implementation, except to say that it is a surmountable problem that the State Bar incurred by ignoring the plaintiffs' needs.[60] It may be that the State Bar's future administration of the bar exam will allow the plaintiffs' suggested accommodations. But on this record, the State Bar has demonstrated that for the October 2020 bar, the proposed accommodations would fundamentally change, disrupt, and burden the State Bar's administration of the exam.

### 2.  Likelihood of Success on the Merits: ADA Claim Against the NCBE

The NCBE contends that the plaintiffs are not likely to succeed on the merits of the ADA claims for two reasons: (1) the plaintiffs lack standing because the NCBE will allow a remote written MBE, and thus the plaintiffs have not shown an injury fairly traceable to the NCBE that will be redressed by a favorable judicial decision; and (2) the plaintiffs do not state an ADA claim against it.[61] The plaintiffs lack standing and are not likely to prevail on the merits of the claim.

#### 2.1    Standing

Federal-court jurisdiction extends only to "cases" and "controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997); *see Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

---

[60] Reply to State Bar Opp'n – ECF No. 47 at 18–19.

[61] NCBE Opp'n – ECF No. 42 at 9–16.

1

To establish that an injury is "fairly traceable" to the defendant, "there must be a causal

2
connection between the injury and the conduct complained of[:] the injury has to be "fairly . . .

3
trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent

4
action of some third party not before the court." *Lujan*, 504 U.S. at 560 (quoting *Simon v. Eastern*

5
*Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976)).

6

To establish redressability, a plaintiff must show that it is "likely, as opposed to merely

7
speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (quoting *Simon*

8
426 U.S. 26, 38, 43) (cleaned up). A plaintiff's burden to demonstrate redressability is "relatively

9
modest." *Renee v. Duncan*, 686 F.3d 1002, 1013 (9th Cir. 2012) (quoting *Bennett v. Spear*, 520

10
U.S. 154, 171 (1997)). A plaintiff "need not demonstrate that there is a 'guarantee' that [the]

11
injuries will be redressed by a favorable decision." *Id.* (quotation omitted). "[R]ather, a plaintiff

12
need only 'show a "substantial likelihood" that the relief sought would redress the injury.'" *M.S. v.*

13
*Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) (quoting *Mayfield v. United States*, 599 F.3d 964, 971

14
(9th Cir. 2010)). "If, however, a favorable judicial decision would not require the defendant to

15
redress the plaintiff's claimed injury, the plaintiff cannot demonstrate redressability, *see, e.g.*,

16
*Mayfield*, 599 F.3d at 971, unless she adduces facts to show that the defendant or a third party are

17
nonetheless likely to provide redress as a result of the decision, see *Lujan*, 504 U.S. at 562." *Id*.

18

The NCBE has said that it will allow remote proctoring of the MBE and remote paper tests,

19
and it has told the State Bar this. It contends that the decision about remote testing thus is the State

20
Bar's decision, and it is not fairly "traceable to [the] NCBE."[62] Under the circumstances, and

21
based on these representations, the plaintiffs do not have Article III standing. The plaintiffs

22
counter that the need for "reasonable security measures" and the NCBE's requirement of in-person

23
proctoring mean that both defendants' practices cause their injuries.[63] Given the NCBE's

24
concessions, this is not obviously so. Nonetheless, given the relatively modest burden that the

25
plaintiffs have to establish redressability, the court addresses the ADA claim in the next section.

26

27
[62] *Id.* at 12; Hill Decl. – ECF No. 43 at 5 (¶¶ 18–19).

28
[63] Reply to NCBE Opp'n – ECF No. 47-1 at 5–6.

1

### 2.2   ADA Claim

The NCBE contends that the plaintiffs are not likely to succeed on the merits of the ADA claim because it is not a public accommodation subject to Title III of the ADA.[64] The plaintiffs counter that "this distinction is of little consequence" because they have an Unruh Act claim against the NCBE.[65] The plaintiffs are not likely to succeed on the merits of the claims.

First, the plaintiffs do not challenge the NCBE's contention that it is not a private establishment that is considered a public accommodation because it is not one of the twelve categories of private establishments listed in Title III of the ADA. *See* 42 U.S.C. § 12181(7) (listing twelve categories that are considered "public accommodations" if the establishment affects interstate commerce); *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) ( "public accommodations" are "actual, physical places where goods or services are open to the public, and places where the public gets those goods or services"). They also do not meaningfully challenge the NCBE's contention that it is governed by 42 U.S.C. § 12189, which applies to private entities offering exams and requires the NCBE to offer its exams in a place and manner accessible to disabled individuals or to offer "alternative accessible arrangements." Finally, they do not challenge the NCBE's contention that it has done all that it can — given its relative responsibilities compared to the State Bar — to offer the MBE at equally convenient locations and with conditions comparable to those given to non-disabled persons.[66]

Second, the plaintiffs did not cite the Unruh Act in their preliminary-injunction motion and instead challenged both defendants' conduct collectively under the ADA.[67] In any event, the ADA violation is the predicate claim for the Unruh Act claim. The plaintiffs thus are not likely to succeed on the merits of the claim for the same reasons that they are not likely to succeed on the merits of the Title II ADA claim against the State Bar, at least for the October 2020 bar exam.

---

[64] NCBE Opp'n – ECF No. 42 at 13–16.

[65] Reply to NCBE Opp'n – ECF No. 47-1 at 6–7.

[66] NCBE Opp'n – ECF No. 42 at 13–16; *cf.* Reply to NCBE Opp'n – ECF No. 47-1.

[67] Mot. – ECF No. 6 at 26–30.

### 3.   Remaining Winter Factors

The remaining elements are a likelihood of irreparable harm if an injunction does not issue, the balance of equities tips in the plaintiffs' favor, and an injunction is in the public interest. *Winte*r, 555 U.S. at 20.

The plaintiffs have not established irreparable harm. Their concerns about COVID-19, poor performance, and lost professional opportunities are no different than the concerns of any in-person test taker. COVID-19 is a public-health crisis, and it causes understandable stress. But on this record, given the State Bar's COVID-19 protocols, the harm to the plaintiffs is speculative. The State Bar also has mitigated the harm with its provisional-license program and its lowering of the passing score by 50 points.

Given the court's holdings on the plaintiffs' likelihood of success on the merits of the claims and irreparable harm, it does not reach the remaining *Winter* elements.

### CONCLUSION

The court denies the plaintiffs' motion for a preliminary injunction.

**IT IS SO ORDERED.**

Dated: September 30, 2020

_____

LAUREL BEELER
United States Magistrate Judge